OPINION
This is an appeal and crossappeal from a judgment entry of divorce by Judge Anthony J. Russo. Appellant, Donald E. Hornung, appeals the award of periodic spousal support, the distribution of marital equity, the award of attorney fees, and the failure to make a distributive award, on the basis of gender discrimination and abuse of discretion. Appellee/cross-appellant, Diane M. Hornung, also challenges the distribution of marital assets to Mr. Hornung, the award of his attorney fees, the award of temporary and lifetime spousal support to him, and, additionally, several other financial rulings. For the following reasons we affirm in part, reverse in part and remand.
After living together for three years, Diane M. Hornung, then age 45, and Donald E. Hornung, then age 57, were married in March of 1986. It was the third marriage for Mrs. Hornung and Mr. Hornung's fourth. She was employed as a teacher, owned her home since 1971, and in addition to a STRS account, had a trust fund worth in excess of $6.5 million dollars. Mr. Hornung entered the marriage with approximately $30,000 in securities and, while he had a background as a broker, was unemployed. Throughout the next ten years, Mrs. Hornung provided the finances of the couple as Mr. Hornung's venture into an investment service business was short lived and unsuccessful. Mr. Hornung's income consisted of disability benefits commencing 1988 and social security benefits in 1990.
On June 17, 1993, Mrs. Hornung filed a Complaint of Divorce to which Mr. Hornung filed an Answer and Counterclaim. The trial date of August 12, 1994, was continued due to the discharge of Mr. Hornung's lawyer. The trial scheduled for September, October and December of 1995, finally commenced on January 23, 1996, and was heard over an eleven day period ending April 5, 1996. The decision of Magistrate Sacco was issued on July 18, 1996, to which both parties filed objections. On October 8, 1997, Judge Russo issued a Judgment Entry sustaining, in part, and denying, in part, the Decision of the Magistrate. A dispute arose on the judgment entry prepared by Mrs. Hornung's lawyer at the judge's direction and on November 12, 1997, a final Judgment Entry of Divorce was journalized.
The terms of the divorce and controverted facts and issues of law will be addressed in the assignments of error. Mr. Hornung assigns eight errors, and Mrs. Hornung assigns six errors for our review. Due to similarities in law and fact, some of these issues will be treated together.
 I.
Mr. Hornung's first assignment of error states:
 I. THE TRIAL COURTS DETERMINATION THAT $6.5 MILLION OF INCREASE IN THE VALUE OF TRUST ASSETS DURING THE MARRIAGE RESULTING FROM MRS. HORNUNG'S REINVESTING TRUST DIVIDEND INCOMES IS THE SEPARATE PROPERTY OF PLAINTIFF IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, CONTRARY TO LAW AND — ERROR TO THE PREJUDICE OF DONALD E. HORNUNG.
Mr. Hornung claims he is entitled to onehalf of the increase in Mrs. Hornung's trust during the course of the marriage, approximately $3.25 million dollars. He contends that the increase in the trust during the marriage resulted from her decision to permit reinvestment of yearly dividends to which she was entitled but did not take from the fund. He suggests that this decision was "labor" and such dividends become "active" income resulting in marital property" subject to reasonable division. He maintains as error the determination that the reinvested dividends, received by Mrs. Hornung from her trust fund, were "passive" income, and, as such, her "separate property".
Marital property includes all real and personal property that currently is owned by either or both of the spouses and acquired by either or both of the spouses during the marriage. R.C.3105.171(A)(3)(a)(i). Separate property is any real or personal property acquired by one spouse prior to marriage. R.C.3105.171(A)(6)(a)(ii). A trial court is to assume that any property acquired during marriage is marital, unless evidence is offered to rebut that presumption. Barkley v. Barkley (1997),119 Ohio App.3d 155, 694 N.E.2d 989. "[A] spouses' premarital property remains separate property as long as it is traceable, regardless of whether it has been commingled with other property." Id.
Marital property is also all "active income, " or any income and appreciation on separate property due to the labor, inkind, or monetary contribution of either of the parties that occurred during the marriage. R.C. 3105.171(A)(3)(a)(iii). Conversely, separate property includes "passive income" and any appreciation acquired from separate property during the marriage. R.C.3105.171(A)(6)(a)(iii). Passive income is defined as "income acquired other than as a result of labor, monetary or inkind contribution by either spouse. R.C. 3105.171(A)(4).
As a general rule, "[p]roperty that is specifically and directly traceable to property outside the marriage" constitutes separate property. Buckles v. Buckles (1988), 46 Ohio App.3d 102,111, 546 N.E.2d 950, 956. During the course of the marriage, however, separate property may be converted to marital property through the process of transmutation. Dunlap v. Dunlap (March 27, 1996), Hamilton App. Nos. C940033, C940050, unreported. In determining if transmutation has occurred, the trial court must consider he following relevant factors:
 * * * (1) The expressed intent of the parties insofar as it can be reliably ascertained; (2) the source of the funds, if any, used to acquire the property; (3) the circumstances surrounding the acquisition of the property; (4) the dates of the marriage, the acquisition of the property, the claimed transmutation, and the breakup of the marriage; (5) the inducement for and/or purpose of the transaction which gave rise to the claimed transmutation; and (6) the value of the property and its significance to the parties.
Dunlap, supra.
Once a trial court has classified the property as either marital or separate, review of that determination is limited to the standard of manifest weight of the evidence. Marcum v. Marcum
(1996), 116 Ohio App.3d 606, 688 N.E.2d 1085. That standard of review was defined by the court in Barkley, supra, when it stated:
This standard of review is highly deferential and even "some" evidence is sufficient to sustain the judgment and prevent a reversal. A reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony." In Re Jane Doe I (1991),57 Ohio St.3d 135, 566 N.E.2d 1181. See, also, SeasonsCoal Co. v. Cleveland (1984), 10 Ohio St.3d 77,461 N.E.2d 1273.
In the case sub judice the findings of the magistrate regarding the trust were:
 1. Plaintiff was a teacher in Upper Arlington, Ohio at the time the Trust was established. She assumes the Trust was established to protect and preserve the assets put into the Trust. Plaintiff testified that she does not know how much the Trust assets were worth at the time of establishment.
 2. Neither the Plaintiff nor the Defendant have ever directly added money or assets to the Trust.
3. The Trust has always paid its own taxes.
 4. The terms of the Trust provide that the trustee shall payout all net income each year to the Plaintiff.
 5. In reality the Trust has never paid out all net income to Plaintiff. Actual Trust Disbursements to Plaintiff were approximately as follows:
 1986 .............. $ 88,909 1987 .............. $ 85,123 1988 .............. $146,473 1989 .............. $132,917 1990 .............. $116,480 1991 .............. $136,896 1992 .............. $129,118 1993 .............. $130,052 1994 .............. $28,809 (Thru February, 1994)
The Trust also paid any tax due on these disbursements.
6. The trust assets are made up of three separate components.
 a. Securities held by Trustee (See Defendant's Exhibit 10)
 B. Securities held by Merrill Lynch (See Defendant's Exhibit 9) (sic)
 C. The Trust increased in value during the marriage due to market conditions and the fact that all of the net income from the trust was not disbursed to Plaintiff as per the terms of the trust. (sic)
 7. The Trust increased in value during the marriage due to market conditions and the fact that all of the net income from the trust was not disbursed to Plaintiff as per the terms of the trust.
 8 (a) The total value of the Securities held by Merrill Lynch are as follows:
 Date Value
 3-27-86 $264,954 10-31-95 $466,924 Increase $201,970
 8 (b).The total value of securities held by the Trustee are as follows:
 Date Value
 Near time of Marriage $5,579,188 Near time of Trial $15,157,467
Increase $9,578,279
 Note: Comment F of Defendant's Exhibit 10 lists 9 stocks for which the trustee testified there were no reinvested dividends. But the value set forth on Defendant's Exhibit 10 for these 9 stocks was incorrect. It is a about $6,900,000.
 8 (c).Defendant's Exhibit 11 lists the value of real estate held by the trust. Third party Defendant Trustee Thomas McDowell, testified that none of the real estate has been sold or significantly improved during the marriage. Consequently any increase in value of the real estate during the marriage is due to (passive) market conditions.
 9. The Defendant's financial expert, David A. Rodriguez, set forth his report in a document admitted into evidence at trial as Defendant's Exhibit 30. Some of the key points made by Mr. Rodriguez are as follows:
 a) From 1986 to 1994 there was a total of approximately $2,616,164 of trust income not distributed by the trust. This amount does not take into consideration amounts paid out by the trust on Plaintiff's behalf for tax obligations.
 b) From 1986-1995 the total trust assets appreciated from $6,505,866 to $17,297,191 or a total appreciation of $10,791,335.
It is clear from the record that the trust was established by Mrs. Hornung's father prior to the marriage. During the course of the marriage the trust always paid its own taxes, Russell v.Russell (June 30, 1997), Scioto App. No. 96CA2474, unreported, and, outside of the reinvested dividends, neither Mrs. nor Mr. Hornung directly contributed to the trust's value. Further, the trust was maintained and controlled by Thomas McDowell, the trustee and Mrs. Hornung's brother. Although we can trace yearly cash disbursements to Mr. Hornung, "it is irrelevant to the division of marital assets that the income from this trust fund was used during the marriage to pay for marital expenses." Brennen v. Brennan (November 9, 1995), Portage App. No. 94-PA-0060, unreported. The trust is clearly traceable as Mrs. Hornung's separate property prior to the marriage, and the control of the trust, including all investment decisions was left up to the trustee.
Nothing that Mrs. Hornung did throughout the course of the marriage can be said to be active in nature where her labor or control had the consequence of transforming this separate property into marital property. As a result, Mr. Hornung's first assignment of error is not well taken.
 II.
Mr. Hornung's second assignment of error provides:
 II. THE TRIAL COURT COMMITTED ERROR TO DONALD HORNUNG'S PREJUDICE IN ITS DETERMINATION THAT NO MARITAL EQUITY EXISTS TN THE MARITAL RESIDENCE, WHICH WAS BASED ON THE COURT'S CLERICAL ERROR TRANSPOSING NUMBERS IN THE EXPERT APPRAISAL REPORT ADOPTED BY THE COURT AND RESULTING IN A FINDING OF CURRENT FAIR MARKET VALUE NOT SUPPORTED BY ANY EVIDENCE, WHATSOEVER IN THE RECORD.
A division of property shall not be reversed unless it is determined by a reviewing court that the trial court abused its discretion. Martin v. Martin (1985), 18 Ohio St.3d 292, 294-295,480 N.E.2d 112, 113-115. An abuse of discretion is more than an error of judgment, it means the court acted in an unreasonable, arbitrary, or unconscionable manner. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140, 1142.
It is Mr. Hornung's position that he is entitled to $21,000, which reflects a onehalf interest in the marital equity in the family home. Mr. Hornung suggests that his appraisal of the value of the home was adopted by Magistrate Sacco and through a clerical error on the part of the magistrate — transposing $450,000 to $405,000 — the marital equity was erased to his detriment.
The findings of the magistrate concerning the distribution of the marital residence were:
With respect to the marital premises located at 121 Meadow Lane, Solon, Ohio 44139, the magistrate makes the following findings:
1. The home by the Plaintiff prior to this marriage.
 2. Plaintiff's opinion of the value of the home at trial was $300,000 to $310,000. Her pretrial statement set forth an estimate of $350,000. Defendant's pretrial statement set forth a value of $550,000.
 3. Michael Folkman appraised the home on behalf of Plaintiff, as of January 27, 1996 at $300,000 (Plaintiff's Exhibit WWW)
 4. Malcolm Rockwood appraised the home on behalf of Defendant as of January 1996 at $450,000 (Defendant's Exhibit 28). As of June 11, 1986, Mr. Rockwood felt the property was worth $120,000.
 5. The County tax value of the home as of 1996 is $320,600. The County tax value as of 1986 was $119,500.
 6. A $300,000 line of credit was taken out on the home during the marriage. There was testimony (even by Mr. Folkman) that generally banks will not lend up to 100% of the value they believe a home to be worth.
 7. While the extent of the improvements made to the home by Defendant during the marriage was disputed, there is no question that significant improvements were made to the home during the marriage (and just before) and that the Defendant himself and his son physically put much time and labor into improving the home.
Upon the foregoing, the Magistrate concludes that the equity in the marital home shortly before the time of marriage was $120,000 less $18,000 mortgage; and that the equity in the home as of the trial is approximately the same i.e. $405,000 value less $305,000 mortgages. The Defendant argues that Plaintiff, via trust income to which she is entitled, could pay off the mortgages at any time.
 * * *
Plaintiff is hereby awarded as property division the real property located at 121 Meadow Lane, Solon, Ohio 44139.
In assessing the relative value of the marital home, it appears that the magistrate attempted to reach a value that was consistent with each of the appraisers' values, while still taking into consideration the value of applicable mortgages. However, a careful review of the record indicates that it is devoid of evidence to substantiate the value determined by the magistrate. In view of this fact, coupled with the possibility that the amount, as transcribed, may have been the result of clerical error, and the evidence presented of the appellant's substantial improvements to the home, it is the duty of this court to affirm Mr. Hornung's second assignment of error and remand this cause for further assessment by the judge.
 III.
Mr. Hornung's third assignment of error and Mrs. Hornung's fifth cross-assignment of error address the same issues of law and will be treated together. They state:
 III. THE TRIAL COURT ABUSED ITS DISCRETION IN ITS AWARD OF ATTORNEY FEES AND EXPENSES TO DONALD HORNUNG, WHICH AWARD IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 V. THE TRIAL COURT ABUSED ITS DISCRETION IN ITS AWARD OF ATTORNEY FEES AND EXPENSES TO DONALD E. HORNUNG
Mr. Hornung contends that the magistrate's finding that he was entitled to only $55,000 in attorney fees, and the judges decision to award only $50,000 in fees, are both erroneous as he incurred over $107,000 in attorney fees and expenses. He submits that the magistrate erred in failing to consider fees and expenses charged after January 1, 1996.
A trial court's award of attorney's fees will only be disturbed on a clear showing of an abuse of discretion by the trial court. Birath v. Birath (1988), 53 Ohio App.3d 31, 39,558 N.E.2d 63. Loc.Dom.Rel.R. 21 provides that a party seeking attorney fees must provide evidence that includes: (1) an itemized statement for services rendered; (2) evidence as to the complexity of the case; (3) a statement as to the attorney's experience in domestic relations; and (4) the relative income of each party that is not otherwise disclosed through a hearing.
Regarding attorney fees the magistrate stated the following: Plaintiff has incurred attorney fees of $32,000 to $33,000 for services rendered in the instant case. She testified that she had paid her attorney fees in full as of the month before trial.
Defendant has incurred attorney fees and expenses of $71,886 for services rendered in the instant-case. Said fees are based on billable hours at the rate of $225 per hour for Attorney James Skirbunt and billable hours at a rate of $175.00 per hour for Attorney Paul Buser.
An itemization of said legal fees and expenses was admitted into evidence as Defendant's Exhibit 12.
The Defendant paid his attorney James Skirbunt a retainer of $5,000 and has paid nothing more since.
Both Paul Buser and James Skirbunt's expertise and experience were stipulated to. Some of the issues relating to attorney fees included that of the novel legal issues raised at trial; that of the duplication of efforts after the Defendant switched counsel to Mr. Skirbunt's office; and that of the duplication of efforts as both James Skirbunt and Paul Buser attended conferences and hearings on behalf of Defendant. The hourly rate requested is at the high end of the range for customary fees in this locality for attorneys practicing in Domestic Relations Court.
The marital assets and liabilities, as set forth above, are not sufficient to support an award of attorney's fees sought.
Based on the foregoing, attorney fees in the amount of $55,000 are reasonable.
The Magistrate concludes that after the division of the marital property and the award of spousal support, as recommended hereinafter, Defendant will not have the financial ability to contribute to these fees.
Judge Russo, in his Journal Entry of Divorce amended this finding when he stated:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff shall pay Defendant the sum of $50,000.00 toward attorney fees as additional spousal support, for which sum judgment is rendered and execution may issue.
It appears from the record that Mr. Hornung complied with all the mandates necessary for a request for attorney fees, and Mrs. Hornung's attorney fees are understated. It is puzzling to this court why the magistrate, and subsequently the trial court, only awarded less than half of the fees requested. Mr. and Mrs. Hornung have a great disparity in income, (the fourth prong of the test) and most of Mr. Hornung's income, except for his modest social security, will be derived from Mrs. Hornung. Requiring Mrs. Hornung to pay all of Mr. Hornung's reasonable attorney fees would seem mandated in light of the disparity in incomes.
Mr. Hornung's third assignment of error is affirmed, Mrs. Hornung's fifth cross assignment of error is denied and this cause is remanded for the reassessment of the award of attorney fees.
 IV.
Mr. Hornung's fourth assignment of error states:
 IV. THE TRIAL COURT ERRED TO THE PREJUDICE OF DONALD HORNUNG BY FAILING TO AWARD INTERIM ATTORNEY FEES AND EXPENSES DURING THE ENTIRE PENDENCY OF THIS MATTER, GIVEN THE DISPARITY OF INCOME AND ASSETS AVAILABLE TO THE PARTIES TO FUND THE LITIGATION, AND BY ITS FAILURE TO EVEN SCHEDULE A HEARING ON THE INTERIM ATTORNEY FEES AND EXPENSES.
Mr. Hornung claims that his four motions for Interim Attorney Fees and Expenses filed between June of 1995, and April of 1996, were ignored and never ruled upon. It is his position that by, in effect, denying the motions, an unfair playing field was created and capitalized upon by Mrs. Hornung.
It is within the sound discretion of the trial court to award attorney fees in a divorce action. Babka v. Babka (1992), 83 Ohio App.3d 428,615 N.E.2d 247. A decision not to award attorney fees will be reviewed only upon a showing of an abuse of that discretion. Layne v. Layne (1992), 83 Ohio App.3d 559,615 N.E.2d 332. In Oatey v. Oatey (1992), 83 Ohio App.3d 251,614 N.E.2d 1054, we held that an award of interim attorney fees may only be granted when the movant presents evidence of the reasonable value of services actually received. Further, in DeWerth v. DeWerth
(February 11, 1993), Cuyahoga App. Nos. 63320, 63429, unreported, we found that R.C. 3105.18 (H), in its application, "contemplates that services must be actually rendered in order to qualify for a fee award." Keating v. Keating (June 17, 1993), Cuyahoga App. Nos. 63885, 64943, unreported. Moreover, in considering whether to make such an award, "the court shall determine whether either party will be prevented from fully litigating their rights and adequately protecting their interests if it does not award reasonable attorney's fees." R.C. 3105.18 (H). In the instant case, Mr. Hornung's June 14, 1995, motion for interim legal fees displayed an obvious need, and included an affidavit from his attorneys at Skirbunt Skirbunt, that included a detailed report of services rendered. The sum total of fees owed by Mr. Hornung as of June 6, 1995 totaled $40,466.00. The affidavit in said motion showed that the itemization of the work performed by his attorneys was very specific in its explanation of all services performed, and all appear to be reasonable in nature for the case sub judice. As a result, due to the disparity in income of the parties in question, the specific nature of the affidavit presented by his attorneys, and the obvious need presented by Mr. Hornung for reimbursement, the trial court abused its discretion in ignoring his motions, and not having a hearing to determine whether to award the interim attorney fees requested.
As this court has found that the question of such attorney fees may constitute a final appealable order, Oatey, supra, it could be argued that the failure to rule upon said motion(s) within a reasonable time is a constructive denial.
Mr. Hornung's fourth assignment of error is well taken in so far as the failure of the magistrate and judge to take action on his motion(s) constituted a denial of any interim attorney fees.
 V.
Mr. Hornung's fifth assignment of error and Mrs. Hornung's first cross-assignment of error address the same facts and issues of law, and will thus be treated together. They state:
 V. THE TRIAL COURT ERRED TO THE PREJUDICE OF DONALD HORNUNG AND ABUSED ITS DISCRETION AS TO THE COMMENCEMENT DATE OF TEMPORARY SPOUSAL SUPPORT.
 I. THE TRIAL COURT ERRED TO THE PREJUDICE OF DIANE M. HORNUNG AND ABUSED ITS DISCRETION BY AWARDING TEMPORARY SPOUSAL SUPPORT TO DONALD E. HORNUNG.
Mr. Hornung filed four motions for temporary support commencing September 1993. None were ruled upon until after the trial when the magistrate's determination, later modified by the judge, awarded him $2,000 per month from May 1994 to July 1996. Mr. Hornung argues that the award should be retroactive to September 1993, and that he should not be required to repay from that award, $32,000 in loans he received from Mrs. Hornung.
Mrs. Hornung contends that no temporary support was necessary or supported by any evidence. She claims Mr. Hornung continued to reside in the family home until the time of trial and she paid all the household bills. She contends he had a monthly income of over $1,000 and supplemented that by wrongfully making monthly withdrawals from a marital asset commencing September 1994, and eventually totaling over $60,000.
R.C. 3105.18(B) states:
 (B) In divorce and legal separation proceedings, upon the request of either party and after the court determines the division or disbursement of property under section 3105.171 [3105.17.1] of the Revised Code, the court of common pleas may award reasonable spousal support to either party. During the pendency of any divorce, or legal separation proceeding, the court may award reasonable temporary spousal support to either party.
Temporary spousal support is a means of providing sustenance to an economically disadvantaged party during the pendency of litigation. Soley v. Soley (1995), 101 Ohio App.3d 540,655 N.E.2d 1381. In its distribution, a party is not entitled as a matter of right, but must present evidence as to need before it will be awarded. Stone v. Stone (1954), 98 Ohio App. 240, 122 N.E.2d 404.
The disparity in income in the present case clearly presented the necessity of an award of temporary spousal support. Mr. Hornung displayed a need and expense account for well above $2,000. Mrs. Hornung, on the other hand, receives in excess of $500,000 in yearly interest. The magistrate and judge determined, as it is their discretion, that equity would dictate that the temporary support was warranted and would begin in the date of "separation", when the couple ceased sharing the same bedroom. Berish v. Berish
(1982), 69 Ohio St.2d 318, 320, 432 N.E.2d 183, 185. See, also,Russell v. Carr (December 18, 1997), Cuyahoga App. Nos. 71860, 72105, unreported. Since the amount awarded and the date for accrual had a basis in law and fact, the award of temporary spousal support was neither unreasonable or arbitrary. Noe v. Noe (Sept. 29, 1995), Lucas App. No. L-94-077, unreported.
Accordingly, Mr. Hornung's fifth assignment of error and Mrs. Hornung 5 first assignment of error are overruled.
 VI.
Mr. Hornung's sixth assignment of error and Mrs. Hornung's sixth cross-assignment of error will also be treated together. They state, accordingly:
 VI. THE TRIAL COURT ERRED TO THE PREJUDICE OF DONALD E. HORNUNG AND ABUSED ITS DISCRETION AS TO THE AMOUNT OF PERIODIC SPOUSAL SUPPORT AWARDED TO HIM, BY INCLUDING COHABITATION AS A TERMINATING EVENT, BY FAILING TO AWARD MR. HORNUNG ANY LUMP SUM SPOUSAL SUPPORT, AND BY FAILING TO PROVIDE ANY SECURITY SAFEGUARDS FOR MR. HORNUNG AS TO HIS AWARD OF SPOUSAL SUPPORT IN THE EVENT OF MRS. HORNUNG'S DEATH.
 VI. THE TRIAL COURT ERRED TO THE PREJUDICE OF DIANE M. HORNUNG AND ABUSED ITS DISCRETION BY AWARDING AN EXCESSIVE AMOUNT OF LIFETIME SPOUSAL SUPPORT TO DONALD E. HORNUNG.
It is Mr. Hornung's argument that $3,750 per month for life, and the award of spousal support conditioned on no cohabitation with no surety was unreasonable. Mrs. Hornung submits that merely because she has substantial income from separate property, Mr. Hornung is not entitled to spousal support in excess of his realistic needs and, based upon a totality of circumstances, he is not even entitled to any support as he is fully capable of earning a living.
R.C. 3105.17 states in pertinent part:
 (B) In divorce and legal separation proceedings, upon the request of either party and after the court determines the division or disbursement of property under section 3105.171 of the Revised Code, the court of common pleas may award reasonable spousal support to either party.
 (C) (1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of the spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 (a) The income of the parties, from all sources including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parities;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
An award of spousal support is reviewed to determine if the court has abused its discretion. Blakemore, supra. The record indicates that in determining the appropriateness and reasonableness of spousal support for Mr. Hornung, the magistrate and the judge considered the applicable factors listed in R.C.3107.18(C)(1). Mr. Hornung has social security benefits of $9,000 and the marital assets. The spousal support of $45,000 per year is not unreasonable, arbitrary or unconscionable. The couple's life style was comfortable but not lavish.
Further, it is not an abuse of discretion to make condition such support on non-cohabitation "as if remarried". Piscione v.Piscione (1992), 85 Ohio App.3d 273, 619 N.E.2d 1030. With respect to ensuring Mr. Hornung's lifetime support, not all of Mrs. Hornung's property is in trust. Should she transfer it to avoid his claim(s) he will enjoy all the protections given to creditors.Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 554 N.E.2d 83.
As a result, Mr. Hornungs' sixth assignment of error and Mrs. Hornung's sixth assignment of error are not well taken.
 VII.
Mr. Hornung's seventh assignment of error states:
 VII. THE TRIAL COURT ABUSED ITS DISCRETION IN ITS FAILURE TO MAKE A DISTRIBUTIVE AWARD TO DONALD E. HORNUNG.
Mr. Hornung contends that it would be equitable to make a distributive award to him of $2.5 million dollars in light of how little he is receiving in assets and support when Mrs. Hornung has so much and won't miss it. R.C. 3105.171(E) states in pertinent part:
 1) The court may make a distributive award to facilitate, effectuate, or supplement a division of marital property.
The court may require any distributive award to be secured by a lien on the payor's specific marital property or separate property.
 (2) The court may make a distribute award in lieu of a division of marital property in order to achieve equity between the spouses, if the court determines that a division of the marital property in kind or in money would be impractical or burdensome.
A trial court has broad discretion to order a distributive award to one spouse from the other's separate property if authorized by statute and supported by facts. Swartz v. Swartz
(1996), 110 Ohio App.3d 218, 673 N.E.2d 972. On review, an appellate court may not disturb this order absent an abuse of discretion. Id.
It is clear from the record, and the foregoing, that the magistrate, and subsequently the judge reached their conclusions regarding the distribution of marital property and spousal support, and did not act in an arbitrary, unreasonable, or unconscionable manner in determining that no distributive award was warranted. Mr. Hornung received all the marital assets and lifetime spousal support. Accordingly, his seventh assignment of error is overruled.
 VIII.
Mr. Hornung's eighth assignment of error provides:
 VIII. THE TRIAL COURT'S OVERALL AWARD TO DONALD HORNUNG IS FUNDAMENTALLY UNFAIR, IT CONSTITUTES AN ABUSE OF DISCRETION, AND IT DISCRIMINATES ON THE BASIS OF GENDER.
Mr. Hornung contends that had he been the wife in this marriage he would have received more support and property. There is no record of judicial misconduct in this case and no evidence supporting his claim that the decision was gender influenced.Shaffer v. Shaffer (1996), 109 Ohio App.3d 205, 617 N.E.2d 1317. This assignment of error is without merit.
 IX.
Mrs. Hornung further cross-assigns three errors in law that were not addressed. Her second cross-assignment of error states:
 II. THE TRIAL COURTS DETERMINATION THAT THE $100,000 NOTE HAD BEEN FORGIVEN WAS AN ERROR AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Three months after they were married, Mr. Hornung endorsed an interest bearing promissory note for $100,000 prepared by Mrs. Hornung's lawyer. The money was to be used to set up Mr. Hornung's investment business in which Mrs. Hornung was to be involved as a real estate broker. The parties disputed whether the $100,000 was a loan to the business or a gift. Mrs. Hornung did agree she never requested any payment(s) on the note even after the business failed. There was sufficient evidence in the record to support the finding that Mrs. Hornung forgave the debt.
Clearly, the magistrate was in the best position to evaluate the testimony of each witness and weigh the veracity of their claims. A reviewing court will not reverse the judgement unless it is against the manifest weight of the evidence; Faber v. QueenCity Terminals, Inc. (1994), 93 Ohio App.3d 197, 638 N.E.2d 115. Accordingly, Mrs. Hornung's second assignment of error is overruled.
 X.
Mrs. Hornung's third cross-assignment of error is:
 III. THE TRIAL COURT ERRED TO THE PREJUDICE OF DIANE M. HORNUNG AND ABUSED ITS DISCRETION BY OFFSETTING THE $32,000 DUE HER AGAINST THE TEMPORARY SUPPORT AWARDED DONALD E. HORNUNG THEREBY DENYING HER A TAX DEDUCTION FOR $32,000 OF SPOUSAL SUPPORT.
Mr. Hornung submits that the judge should have ordered Mr. Hornung to repay her the $30,000 she loaned him prior to the marriage to pay off a line of credit and $2,000 from a 1992 check issued to Mrs. Hornung not by reducing what she may have to pay in temporary support but from the marital assets he has been awarded. Although the trial court must consider the tax consequences of property division, R.C. 3105.171(F)(6), the modest nature of the marital assets awarded did not ensure payment of such debt.
Pursuant to App.R 12(A)(2) and App.R. 16(A)(7) an argument section of an appellant's brief must contain citations to the authorities, statutes, and parts of the record on which the arguments rely. In this assignment of error, Mrs. Hornung fails to outline anything unconscionable or arbitrary about the judge's decision on this issue outside of offering her disagreement with the findings. As a result, we find nothing that demonstrates an abuse of discretion with respect to the manner in which the temporary support was offset. Mrs. Hornung's second assignment of error is not well taken.
 XI.
Mrs. Hornung's fourth cross-assignment of error states:
 IV. THE TRIAL COURT ERRED TO THE PREJUDICE OF DIANE M. HORNUNG AND ABUSED ITS DISCRETION BY AWARDING DONALD E. HORNUNG ALL OF THE MARITAL ASSETS.
Mrs. Hornung contends that under R. C. 3105.171, marital property must be divided equally unless it would be inequitable. She argues that awarding Mr. Hornung all $35,847 in marital assets and permitting him to enjoy the wrongful dissipation of $60,000 from the Robert Thomas Securities Account has no basis in fact.
In an action for divorce, once a trial court has determined the status of the parties' property, the court must then equitably divide the marital estate. R.C. 3105.171 (B). Pursuant to this statute, the trial court is vested with broad discretion to determine what is equitable under the particular facts and circumstances of each case. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128,130, 541 N.E.2d 597. As a result, an appellate court nay not substitute its judgment for that of the trial court unless it appears that the trial court abused its discretion. Martin v.Martin (1985), 18 Ohio St.3d 292, 294-295, 480 N.E.2d 1112.
Due to the gross disparity in income and the relative value of the marital assets to Mrs. Hornung's ($17,500,000.00+) we cannot say that the magistrate or judge abused their discretion. Mrs. Hornung's fourth assignment of error is overruled.
Judgment affirmed in part, reversed in part, and remanded.
It is ordered that the parties shall share equally the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court, Domestic Relations Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
LEO SPELLACY. P.J. AND
 MICHAEL J. CORRIGAN, J. CONCURRING
 IN JUDGMENT ONLY.
ANNE L. KILBANE, JUDGE.