**SOLEY, Appellee,**

v.

**SOLEY, Appellant.**

[Cite as *Soley v. Soley* (1995), 101 Ohio App.3d 540.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L-94-155.

Decided March 3, 1995.

542

*Henry B. Herschel,* for appellee.
*David F. Wiley,* for appellant.

SHERCK, Judge.

This appeal comes to us from several orders and judgments issued by the Lucas County Court of Common Pleas, Domestic Relations Division. These judgments and orders are the product of an unusually entangled divorce action. See, also, a companion case, *In re Soley* (Mar. 3, 1995), Wood App. No. 94WD041, unreported, 1995 WL 84691. Because we conclude that the trial court correctly determined that it had jurisdiction to hear this matter and further conclude that it did not abuse its discretion in the subsequent division of the parties' property and the fashioning of spousal support orders, we affirm its actions.

Appellee, Elizabeth Szoboszlai Soley, is a native of Hungary and now a naturalized citizen of the United States. Appellant Robert Stephen Soley is a first-generation American, born of Hungarian parents. Appellant and appellee are first cousins.

On October 21, 1970, appellant and appellee married in Toledo, Ohio. Later, the couple repeated their vows both in a ceremony in Niagara Falls, New York, and in a separate Hungarian ceremony in Lorain, Ohio. For the next twenty years, appellant and appellee lived together as husband and wife. One child, now emancipated, was born of this union.

On October 12, 1990, appellee instituted what was then known as an action for alimony only. On November 16, 1990, appellant answered appellee's complaint admitting the fact and the date of the marriage. At the same time, appellant filed a counterclaim seeking a divorce on grounds of gross neglect, extreme cruelty and incompatibility.

While this action was pending, appellant proceeded to obtain a divorce in the Dominican Republic and, on December 27, 1990, married Katalin Terezia Nortits (n.k.a. Soley) in Budapest, Hungary. Appellant brought Katalin and her daughter from a prior marriage to the United States in January 1991. Later in 1991, a child was born to appellant and Katalin Solely.

On January 31, 1991, the parties in the instant case agreed to a consent order setting temporary alimony, with appellant agreeing to pay mortgage payments and other household expenses. Additionally, appellant agreed to provide $700 monthly spousal support. Later, appellant moved to reduce the amount of this temporary order; however, his motion was denied.

Prior to trial, appellee moved for an order requiring appellant to show cause why he should not be held in contempt for failure to abide by the temporary spousal support order. This motion was not considered until after the final divorce hearing.

Contemporaneously with the filing of the show cause motion, but apparently unknown to appellee or the trial court, appellant and Katalin Soley petitioned for a dissolution of their marriage in the Wood County Court of Common Pleas, using the names Theresa and Robert Foley (sic). That petition, later amended to reflect the parties' correct names, was granted prior to the conclusion of the divorce trial in this matter. The decree of dissolution in the Wood County case provided for spousal and child support in the amount of $2,600 monthly through wage withholding. Appellee's ultimate intervention in that case and the Wood County Court's decision to set aside that judgment is a topic of a separate appeal.

The instant matter encompassed three days of trial in October and November 1992. At trial, the court took evidence on the valuation of the parties' property

and the manner of its acquisition. At the conclusion of testimony, the trial court, with appellant's consent, permitted appellee to amend her complaint to a prayer for divorce. In addition, the trial court also, over appellee's objection, delayed the close of evidence for an occupational specialist's evaluation of appellee's employability; the court conditioned its acceptance of this report on appellant's posting a bond to pay the specialist. The trial court also modified its prior temporary spousal support order, making the entire amount ordered a sum certain to be paid through wage withholding.

On December 1, 1992, appellant's trial counsel was granted leave to withdraw as counsel. Following this, appellant began to file documents *pro se.* Appellant filed an answer to appellee's amended complaint, wherein he denied the validity of the marriage on the ground that a marriage between first cousins is void *ab initio.* He filed a motion for modification of temporary spousal support and a motion to dismiss plaintiff's complaint also premised on the proposition that the marriage was void.

On December 23, 1992, the trial court held a hearing on all of appellant's motions as well as appellee's motion for an order to show cause. Appellant did not appear at this hearing. On January 5, 1993, the trial court denied all of appellant's motions, struck appellant's *pro se* answer and found him in contempt for violating the conditions of the temporary spousal support order. The court imposed a thirty-day sentence and $250 fine for each of three violations; however, the court allowed appellant to purge himself of the contempt by paying his arrearages and appellee's attorney fees.

Appellant through newly acquired counsel then filed a motion to vacate the January 5, 1993 judgment. Subsequently, appellant moved to reconvene the trial to enter evidence of the parties' status as first cousins and renewed his motion to modify spousal support, contending that since the marriage was void the court had no jurisdiction to order any spousal support. In the alternative, appellant argued that his spousal support should be reduced because of his financial obligations to Katalin Soley as a result of the Wood County dissolution.

These motions were assigned to retired Judge Robert Dorrell. After they were assigned, appellant petitioned this court for a writ prohibiting Judge Dorrell from acting. Appellant again argued that the court lacked jurisdiction because the parties' marriage was void *ab initio.* We denied appellant's writ holding that he failed to clearly establish that legal proposition; in addition, we concluded that appellant had an adequate remedy at law. *State ex rel. Soley v. Dorrell* (Sept. 2, 1993), Lucas App. No. L–93–322, unreported. Appellant unsuccessfully appealed the decision to the Supreme Court of Ohio. *State ex rel. Soley v. Dorrell* (1994), 69 Ohio St.3d 514, 634 N.E.2d 215.

On December 22, 1993, the trial court rendered its final judgment in this matter. The trial court found that appellant had admitted the marriage in his answer. The court also determined that the "first cousin" issue was not raised during the trial and that appellant was foreclosed from submitting evidence on the issue after having rested. Notwithstanding this, the court also ruled that R.C. 3101.01 does not expressly prohibit first cousin marriages. The court concluded that such marriages are voidable rather than void and are valid if ratified by the parties. Ratification, the court found, had occurred in this case. Additionally, the trial court ruled that even if irregularities had occurred in the ceremonial marriage, the parties' actions, nevertheless, evidenced a common-law marriage, which was available under Ohio law at the time of the initiation of their relationship. The trial court concluded that the parties had a valid marriage under any of the aforementioned theories. The court found the Dominican Republic divorce obtained by appellant during the pendency of the action void.

The court granted appellee a divorce on the ground of incompatibility and, in a lengthy decision, divided the marital assets. The court awarded appellee approximately fifty-five percent of the value of the property divided. The court also ordered appellant to pay appellee $2,000 monthly spousal support, nonmodifiable and payable until appellee's death, remarriage, or cohabitation. Appellant was also ordered to pay appellee's attorney fees.

Upon journalization of the trial court's entry, Judge Dorrell found that appellant's posttrial motions had in effect been disposed of by the trial court's judgment entry, rendering them moot. Appellant's subsequent motion for a new trial was denied by Judge Lewandowski.

From these judgments and orders, appellant brings this appeal, citing seventeen assignments of error:

"I.  The trial judge erred in increasing the order of temporary spousal support and wage withholding when there was no request for an increase.

"II.  The trial judge abused its discretion when on its own motion it consolidated four motions for hearing without proper notice to the appellant.

"III.  The trial judge erred in finding on December 23, 1992 that appellant had been properly served with notice of appellee's motion.

"IV.  The trial judge erred in holding a hearing on appellee's motion filed 12/17/92 (in violation of Civil Rule 6(D) and (E).)

"V.  The trial judge erred in finding appellant's answer to appellee's amended complaint was not timely filed and thereafter striking same.

"VI.  The trial judge erred in dismissing appellant's motion to dismiss appellee's complaint.

"VII.   The trial judge erred in finding appellant waived his right to respond to the amended complaint.

"VIII.   The trial judge erred in the Finding of Fact No. 27, inasmuch as there is no support for this finding in the record.

"IX.   The trial judge erred in his Conclusion of Law No. 2 in finding there was no evidence that appellant and appellee are first cousins and that additional evidence could not be submitted.

"X.   The trial judge erred in sustaining appellee's counsel's objection to appellant's answer to appellee's following question: 'That was a valid marriage anyway, certificate, the whole thing, is that right?'

"XI.   The trial judge erred in his Conclusion of Law No. 4 that O.R.C. 3101.01 does not expressly prohibit and make void marriages between first cousins.

"XII.   The trial judge erred in his Conclusion of Law No. 4 that O.R.C. 3101.01 does not expressly prohibit and make void marriages between first cousins.

"XIII.   The trial judge erred as to Conclusion of Law No. 7.

"XIV.   The trial judge erred in the division of assets.

"XV.   The trial judge erred in making the alimony nonmodifiable except terminable by death, remarriage or cohabitation.

"XVI.   The trial court (Judge Dorrell) erred in dismissing appellant's motions filed on 1/11/93 and 3/15/93 as moot.

"XVII.   Judge Lewandowski erred in not granting appellant a new trial."

## I

■   Pivotal to appellant's appeal is the status of a putative marriage between first cousins by blood.  If the trial court is correct in its determination that such a marriage is voidable rather than void *ab initio*, then much of what appellant assigns as error becomes moot.  As the Supreme Court of Ohio noted, in Ohio this is an "unsettled aspect of the law of marriage." *State ex rel. Soley v. Dorrell, supra,* 69 Ohio St.3d at 516, 634 N.E.2d at 216.

The parties direct our attention to two cases in apparent conflict.  Appellee suggests that *Mazzolini v. Mazzolini* (1958), 168 Ohio St. 357, 7 O.O.2d 123, 155 N.E.2d 206, controls.  In *Mazzolini*, first cousins by blood were married in a Catholic ceremony in Boston and eventually moved to Ohio.  When the marriage failed, the wife went back to Massachusetts.  The husband's Ohio suit for annulment on the ground that marriage between blood first cousins is void *ab initio* was dismissed.  On appeal the Supreme Court held that, although a

marriage between first cousins is not approved by Ohio law, there is no express statutory prohibition which would void such a union.[1]  *Id.* at paragraph three of the syllabus.  Since such a marriage was not proscribed in Massachusetts and "since it would not have been void *ab initio* in Ohio," the court concluded the marriage was valid and not subject to annulment.  *Id.* at 360, 7 O.O.2d at 125, 155 N.E.2d at 208–209.

In response, appellant directs our attention to *In re Estate of Stiles* (1979), 59 Ohio St.2d 73, 13 O.O.3d 62, 391 N.E.2d 1026, for support of the opposite proposition.  There, the daughter of a decedent's brother sought a widow's share of the estate, contending that she and her uncle had established a common-law marriage.  The trial court dismissed the application, but the court of appeals reversed, holding that a marriage between uncle and niece was only voidable and was not subject to attack after the death of one of the parties.  The Supreme Court, declining to apply the *Mazzolini* reasoning, reversed, holding that "[a] common-law marriage entered into in Ohio between an uncle and his niece is incestuous and void *ab initio*." *Id.,* syllabus.

Appellant argues that *Stiles* tacitly overrules *Mazzolini.*  We disagree, as the two cases deal with different degrees of consanguinity.  Therefore, it was unnecessary in resolving *Stiles* to reach the *Mazzolini* reasoning.  Indeed, it appears that the discussion of *Mazzolini* appears in *Stiles* only because of the putative widow's urging that *Mazzolini* be extended to apply to the uncle/niece relationship.  Such an extension, however, would be antithetical to a line of cases which hold such marriages void.  See *State v. Brown* (1890), 47 Ohio St. 102, 23 N.E. 747; *Heyse v. Michalske* (1940), 18 O.O. 254, 31 Ohio Law Abs. 484; *Basickas v. Basickas* (1953), 93 Ohio App. 531, 51 O.O. 229, 114 N.E.2d 270.  As both *Stiles* and *Mazzolini* note, until its 1974 repeal, Ohio's incest statute declared sexual relations between an uncle and niece to be criminal.  See former R.C. 2905.07.  No such disapprobation has ever applied to first cousins.  *Mazzolini,* 168 Ohio St. at 359, 7 O.O.2d at 124–125, 155 N.E.2d at 208.

In applying the Ohio syllabus rule, see *State ex rel. Canada v. Phillips* (1958), 168 Ohio St. 191, 5 O.O.2d 481, 151 N.E.2d 722, at paragraph six of the syllabus, we note the restrictive language of the syllabus in *Stiles* which declared only a marriage between an uncle and his niece void.  Paragraph three of the *Mazzolini* syllabus, which deals with the validity of out-of-state marriages between first cousins, clearly states that "[a]lthough a marriage in Ohio between first cousins is not approved by law, it is not expressly prohibited and made void by any statutory enactment * * *."  The syllabus law of *Mazzolini* was not in response

---

1.  The statute governing this matter is R.C. 3101.01, which provides:

   "Male persons of the age of eighteen years, and female persons of the age of sixteen years, not nearer of kin than second cousins, and not having a husband or wife living, may be joined in marriage.  * * *"

to some speculative circumstance, but in response to the question with which the *Mazzolini* court stated it was "squarely confronted," that question being "whether a marriage between first cousins is *void* in Ohio." *Id.* at 359, 7 O.O.2d at 124, 155 N.E.2d at 208. (Emphasis *sic.*)

The wisdom of the *Mazzolini* holding is made manifest by the facts of the instant case. Here appellant seeks a declaration that his marriage never existed so as to avoid providing for the mother of his child and his companion of twenty years. To permit appellant to elude his obligations in this manner would be such an assault on the public conscience as to undermine confidence in the fairness of its judiciary. In consideration of this and the underlying rationale of the *Mazzolini* case, we conclude that the trial court properly concluded that a marriage between blood first cousins is voidable rather than void. Accordingly, appellant's Assignments of Error Nos. VI, XII and XVII are found not well taken. Assignments of Error Nos. IX, X and XI are rendered moot.

Except for the contempt matter, the December 23, 1992 hearing also related to the first-cousin issue. Therefore, Assignments of Error Nos. II, IV, V, VII, and XIII are found moot.

## II

We now consider appellant's assignments of error that are unrelated to the first-cousin issue. Appellant, in his first assignment of error, complains that the trial court erred in *sua sponte* modifying the temporary support order. However, it is unclear to which order appellant directs his complaint.

■ If appellant objects to the November 24, 1992 order, then there is no error, as the trial court simply ordered appellant to pay appellee for household expenses that he had previously been ordered to pay. Appellant had repeatedly failed to make these payments and, as a result, the mortgage on the marital home was seriously in arrears. By converting these payments to a sum certain and ordering payment by wage withholding, the trial court did nothing more than to ensure compliance with its prior order.

■ If appellant is complaining about the increase in the amount of spousal support between the temporary and final award, there is similarly no error. Temporary spousal support orders are exactly that: temporary. It is the purpose of such orders to provide an economically disadvantaged spouse a means of maintaining herself or himself during the pendency of the action. See R.C. 3105.18(B). A final order is rendered only after a hearing is held and the court considers the evidence presented in light of the factors enumerated in R.C. 3105.18(C). When a final order is rendered, a temporary award is merged into the final decree. *Colom v. Colom* (1974), 58 Ohio St.2d 245, 12 O.O.3d 242, 389

N.E.2d 856, syllabus. The decision whether spousal support is to be awarded and the amount of that support, like the division of marital property, is within the discretion of the court and will not be overturned absent an abuse of discretion. *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 352, 20 O.O.3d 318, 320–321, 421 N.E.2d 1293, 1296–1297. See, also, paragraph two of the syllabus. Upon review of the record in this matter, we cannot say that the trial court abused its discretion in granting spousal support. Accordingly, appellant's first assignment of error is not well taken.

## III

█ Appellant, in his third assignment of error, argues that the trial court erred in finding that he received proper notice of the December 23, 1993 contempt hearing. Appellant maintains that he was out of the country when service of notice was made at his office. Appellant states that he called the court from overseas, spoke personally to the trial judge and explained this to him. The record contains a recitation by the trial judge that such a call occurred. Nonetheless, the court entered a specific finding that proper service had been effected.

█ Although the question of whether proper service has been effected may be a question of law or fact or both, in this instance it is purely a question of fact. Findings of fact will not be disturbed on appeal if they are supported by some competent, credible evidence. *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410–411, 461 N.E.2d 1273, 1276–1277. The trial court found there was service in this matter. The record contains credible evidence to support that finding. Accordingly, appellant's Assignment of Error No. III is not well taken.

## IV

Appellant, in his eighth assignment of error, argues that the record fails to support the trial court's finding that appellant was not credible.

█ The trier of fact is the exclusive judge of the credibility of witnesses. *Swan v. Skeen* (1974), 40 Ohio App.2d 307, 69 O.O.2d 278, 319 N.E.2d 221, syllabus; *Alarm Device Mfg. Co. v. Arnold* (1979), 65 Ohio App.2d 256, 263, 19 O.O.3d 241, 246, 417 N.E.2d 1284, 1289. The very reason for this deference is that a judge is in a position to observe the demeanor, gestures and voice inflections of a witness, all of which are outside the record. *Seasons Coal Co., Inc. v. Cleveland, supra.* Therefore, there is no requirement that determination by the trier of fact of a witness's credibility be supported by the record. Accordingly, appellant's Assignment of Error No. VIII is not well taken.

## V

Appellant's Assignments of Error Nos. XIV and XV concern the equity of the trial court's property division and the propriety of its award of spousal support, made nonmodifiable and terminable only on appellee's death, remarriage or cohabitation.

■ As we previously indicated, a trial court's division of marital property and award of spousal support will not be overturned absent an abuse of discretion. *Cherry v. Cherry, supra.* An abuse of discretion is more than an error in judgment or law; it implies that a court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1141–1142.

■ Appellant maintains that the trial court awarded him only thirty-six percent of the marital property. However, our own analysis, based on the valuation figures shown in the final decree, reveals that the appellee received approximately fifty-five percent of the award while appellant received forty-five percent. This does not take into account the approximate sum of $23,000 that appellant wasted on the Dominican Republic divorce. Further, we consider the award of approximately $14,000 to appellee's attorney as a legitimate response by the court to what can only be described as appellant's endless obstructionism that was evidenced throughout the case.

Therefore, upon viewing the trial court's final division of property as a whole, we cannot say that the court exhibited an attitude that was unreasonable, arbitrary or unconscionable. Accordingly, appellant's Assignment of Error No. XIV is not well taken.

■ With respect to the duration and nonmodifiability of the spousal support award, appellant cites *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 554 N.E.2d 83, for the proposition that normally a decree should provide for a reasonable termination of the award at a time and date certain. *Kunkle*, however, makes specific exceptions for the announced rule "in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home." *Id.* at paragraph one of the syllabus.

In this case, the marriage spanned twenty years. Appellee is in her mid-fifties and although trained in Hungary as a nurse, is qualified for only unskilled or semiskilled work in this country; even at that she is hampered by a lack of fluency in English. Given these factors, we cannot say that the trial court abused its discretion when it determined that appellee fits into the *Kunkle* exception.

Accordingly, there was no error when the court awarded permanent spousal support to appellee.

With respect to the nonmodifiability of the award, R.C. 3105.18(E) makes a court's ability to modify a spousal support order contingent on a finding that there are changed circumstances, coupled with a specific reservation of jurisdiction to modify contained in the final decree. The trial court's order making spousal support nonmodifiable is a refusal to retain future jurisdiction on the issue. R.C. 3105.18(E) specifically allows for this result. Therefore, upon our review of the statute and the record in this case, we cannot say that the trial court abused its discretion in making the order. Accordingly, appellant's Assignment of Error No. XV is not well taken.

## VI

Appellant, in Assignment of Error No. XVI, asserts that the trial court erred in dismissing as moot his motion to terminate spousal support and his motion to vacate the finding of contempt for failure to pay spousal support.

The underlying reason which appellant put forth in support of both motions was that he was not lawfully required to pay spousal support since he was not legally married due to his first-cousin relationship with appellee. However, once the trial court entered its final decree in this matter, the first-cousin issue was decided. Since a motion for relief from judgment must be supported, at the least, by a demonstration of a meritorious defense if relief is granted, *GTE Automatic Elec., Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113, paragraph two of the syllabus, the court's final order rejecting the first-cousin defense made moot both of appellant's motions. Accordingly, appellant's Assignment of Error No. XVI, therefore, is not well taken.

Upon consideration whereof, the court finds substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is affirmed. It is ordered that appellant pay the court costs of this appeal.

*Judgment affirmed.*

ABOOD, P.J., and GLASSER, J., concur.