OPINION
This appeal arises from a judgment of the Marion County Court of Common Pleas wherein the court issued a final divorce decree upon remand from a previous appeal. Among other things, the trial court awarded Plaintiff-Appellee, Carolyn Webb, sustenance alimony for a period of eleven years and found Defendant-Appellant, James Webb, in contempt for failure to pay spousal support pursuant to the temporary orders previously in effect. In addition, the court re-evaluated its previous property division to award James the family business and Carolyn the marital residence and rental property.
The parties were married in 1960 and four children, all of whom are now emancipated, were born as issue of the relationship. Throughout the marriage, James and Carolyn jointly owned various parcels of real estate and in 1986, the parties became co-owners of a small corporation referred to as Webb's Heating and Cooling, Inc. James was specially trained to repair and install various heating and air conditioning units while Carolyn managed all other business matters. The business was fairly successful, evidenced by the fact that in 1991, the parties earned approximately $74,000 from the business; in 1992, their earnings equaled $130,000 and in 1993, the business yielded a profit of $98,000.
In August 1993, James and Carolyn separated and on May 4, 1994, Carolyn filed a complaint for divorce. The referee instituted temporary orders on May 27, 1994 instructing James to pay monthly spousal support in the amount of $1,831. Thereafter, the referee conducted divorce hearings and issued a report and recommendation on April 12, 1995. The trial court adopted the referee's report and filed a judgment entry on April 18th granting the parties' divorce. Although the entry did not award spousal support, the court ordered that Carolyn would receive the family business, which was valued at approximately $139,000; James received the marital residence and rental property.
Carolyn subsequently filed objections to the report and recommendations. On September 15, 1995, the trial court filed an interim order staying the April 18th judgment entry and reinstating the temporary orders. The court then issued a judgment entry on January 16, 1996 overruling Carolyn's objections and affirming the April 18, 1995 divorce decree.
Carolyn then filed a timely appeal to this court wherein she argued, inter alia, that the property distribution was erroneous and that the trial court erred in failing to award spousal support in the final decree. In Webb v. Webb (June 28, 1996), Marion App. No. 9-96-6, unreported, we found merit to Carolyn's arguments. Particularly, this court held that the property distribution plan was inequitable, especially since it was apparent that Webb's Heating and Cooling, Inc. would be much less valuable to Carolyn without James. Although we stated that it was not impossible to award Carolyn the business, we remanded the matter with instructions to revise the property division and to consider the issue of spousal support in light of such a revision.
On September 5, 1996, while the case was on remand, Carolyn filed a motion asking the court to reinstate the May 27, 1994 temporary orders.
On January 16, 1997, the court ruled that the temporary orders had remained in effect throughout the action due to the procedural posture of the case, thus, the court stated that James was never relieved of his responsibility to pay spousal support. At that time, however, the court modified James' monthly support obligation to $1,592, effective January 15, 1997.
Thereafter, Carolyn filed a motion for contempt for James' failure to pay support pursuant to the temporary orders. A hearing on the matter was conducted in June 1997. Approximately one year later, on June 11, 1998, the trial court found James in contempt for failing to pay support and sentenced him to three days in jail. The court stated that James could purge the contempt by paying an extra $100 per week until the arrearage became liquidated.
As a result of this decision, James filed an appeal arguing that the finding of contempt was improper since the temporary orders should not have been reinstated and retroactively applied following the remand. In Webb v. Webb (Feb. 25, 1999), Marion App. No. 9-98-33, unreported, we reversed the judgment of the trial court because we found that the court erred in calculating James' arrearage. Although we further held that the temporary orders were properly reinstated pursuant to Carolyn's September 5, 1996 request, we concluded that the orders were not effective throughout the entire proceedings since there was a gap between the first remand and Carolyn's motion to reinstate. Thus, we again reversed the judgment and remanded the matter with instructions to the trial court to recalculate the arrearage in accordance with our opinion before making a determination on the contempt issue.
In the meantime, prior to the release of our opinion on the second appeal, Carolyn filed another motion for contempt for James' failure to pay spousal support from November 1997 to April 1998. The trial court held a hearing on the matter on May 27, 1998, however, this most recent contempt issue was not resolved until the trial court released its decision on the property and spousal support matters that were remanded from the first appeal.
On November 19, 1998, the trial court rendered a final divorce decree from the initial remand. This time, the court awarded Carolyn the marital residence and the rental property. James was awarded Webb's Heating and Cooling, Inc., which was revalued at $104,591. The court also ordered James to pay spousal support for a period of eleven years: $950 per month for the first three years; $850 per month for the next three years and $500 per month for the final five years. In addition, the court concluded that James was in contempt for failure to pay spousal support from November 1997 in accordance with the temporary orders.
This most recent trial court decision resulted in James filing another timely appeal wherein he asserts eight assignments of error for our consideration and review. The case is now before this court for the third time since its commencement.
 Assignment of Error I The trial court abused its discretion in failing to reserve jurisdiction to modify the eleven year long spousal support award.
In the case sub judice, the trial court ordered James to pay spousal support for a period of eleven years: $950 per month for the first three years; $850 per month for the next three years and $500 per month for the final five years. However, the judgment entry specifically states that the trial court would not retain jurisdiction over the matter and that the support order was not modifiable. James maintains that the court's refusal to retain jurisdiction was erroneous since significant changes in circumstance with respect to health, income or living arrangements could occur during that period of time.
R.C. 3105.18 governs the trial court's reservation of jurisdiction to modify a spousal support award. This statute states, in relevant part:
 (E) [I]f a continuing order for periodic payments of money as spousal support is entered in a divorce * * * action * * * the court that enters the decree of divorce * * * does not have jurisdiction to modify the amount or terms of the alimony or spousal support unless the court determines that the circumstances of either party have changed and unless one of the following applies:
 (1) In the case of a divorce, the decree * * * contains a provision specifically authorizing the court to modify the amount or terms of alimony or spousal support.
We find that the plain language of the foregoing statute specifically permits a trial court to refuse to retain jurisdiction over spousal support matters. See, Soley v. Soley
(1995), 101 Ohio App.3d 540, 551; Kane v. Kane (May 6, 1988), Allen App. No. 1-87-7, unreported; Cook v. Cook (Jan. 14, 1997), Hocking App. No. 95CA27, unreported. We are aware that the Twelfth District Court of Appeals has held that a trial court abuses its discretion by failing to retain jurisdiction over a long-term support order. See Nori v. Nori (1989), 58 Ohio App.3d 69.
While the support order in this case may be considered long-term, we will not adopt the reasoning expressed in Nori. We will, instead, follow the precedent of this court, expressed inKane, where we pointed out that the legislature, by enacting R.C.3105.18(E), clearly chose to leave the decision as to whether to make such an award modifiable to the court's sound discretion. Thus, merely exercising the option not to retain jurisdiction over these matters can not be considered an automatic abuse of discretion.
Appellant's first assignment of error is overruled.
 Assignment of Error II The trial court abused its discretion in reinstating its temporary orders, modified as to the monthly award of spousal support, retroactively on remand and setting an arrearage amount with no evidence admitted to support the arrearage.
It is apparent that the opinion rendered in the second appeal specifically addressed the issue raised in James' second assignment of error. In Webb v. Webb (Feb. 25, 1999), Marion App. No. 9-98-33, unreported, this court held that even though the temporary orders did not remain in effect since their 1994 inception, the court properly reinstated such orders after the first remand upon Carolyn's September 5, 1996 motion to do so. In addition, we also concluded that the trial court could have appropriately ordered retroactive spousal support from the date that the motion was filed. As a result of this holding, the matter was remanded to the trial court with instructions to recalculate the support arrearage based upon the gap in the effective dates of the temporary orders.
Although we acknowledge that the parties were unaware of this opinion prior to filing briefs for the instant appeal, we find that these particular legal issues have already been addressed. Thus, the doctrine of the law of the case, which establishes that the "decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case both at the trial and reviewing levels," precludes this court from revisiting the issue. Pipe FittersUnion v. Kokosing (1998), 81 Ohio St.3d 214, 218, quoting Nolan v.Nolan (1984), 11 Ohio St.3d 1, 3.
Appellant's second assignment of error is overruled.
 Assignment of Error III The trial court on remand abused its discretion in its spousal support award and in its property division in awarding the marital business to the Defendant-Appellant and the real estate to the Plaintiff-Appellee without hearing new evidence.
Appellant first argues that the trial court erred on remand by making a property distribution and awarding spousal support in accordance with the evidence that was taken at the original divorce hearing approximately four years before. We disagree. When a judgment is reversed and remanded for further proceedings, the trial court must take up the matter at the point where the first error was committed. Miller v. Miller (1960), 114 Ohio App. 234. In the initial appeal, this court gave no specific instructions to take new evidence before rendering another decree and remand does not inherently require a new hearing. The record reveals the evidence taken regarding the property distribution and spousal support issues was adequate to permit the findings required by the remand.
Further, contrary to James' contention, the trial court did not abuse its discretion when revaluating and awarding Webb's Heating Cooling, Inc. to James. There is sufficient evidence in the record to demonstrate that his skill and knowledge are the most important assets of the business. Additionally, when reviewing a trial court's valuation of a closely held business, an appellate court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence in the record. Myers v. Garson (1993), 66 Ohio St.3d 610,616, 614 N.E.2d 742, 746; Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 80. When determining the value of marital assets, the trial court has broad discretion in weighing the evidence of value presented. See Singer v. Singer (May 3, 1996), Defiance App. No. 4-95-17, unreported. Finally, "[r]igid rules to determine value cannot be established, as equity depends on the totality of the circumstances." Briganti v. Briganti
(1994), 9 Ohio St.3d 220, 221-222, 459 N.E.2d 896, 897-898
(Citations omitted).
In the original trial of this case, both parties presented testimony from accountants and laypersons concerning the issue of the valuation of the business. Such testimony diverged substantially. Accountant Verne Payne, Defendant's expert, testified that depending on the valuation method utilized, Webb's Heating Cooling, Inc. could be valued at either $81,390 or $14,591. Conversely, Plaintiff's expert, Certified Public Accountant, Craig Jones, testified the business had a value of $139,807. In the 1995 divorce decree, the court relied solely on Mr. Jones' calculated valuation as the value of the business when awarding the business to Carolyn.
On appeal, this court held the trial court abused its discretion in awarding the business to Carolyn and adopting the $139,807 valuation of the marital business without considering James' services to the business. Webb v. Webb (June 28, 1996), Marion App. No. 9-96-6, unreported. In reversing the trial court, we reasoned that the method of valuation utilized to calculate the $139,807 figure failed to take into consideration the circumstances of the corporation necessary for its continued success and the valuation method utilized failed to take into account the worth of the contribution of services, capital and good will attributable to both appellee and appellant respectively.
On remand, the trial court awarded the business to James. The trial court determined the value of Webb's Heating Cooling, Inc. to be $104,591, reasoning the family business was of greater value to James than to Carolyn. Additionally, the trial court determined the success of the business is dependent upon its good will and James' technical expertise; James has the ability to cause the value of the business to fluctuate by his effort or lack thereof; and, although Carolyn contributed significantly to the business, her function was one which did not require particular technical knowledge and skill.
The trial court had before it evidence of the contributions of the respective parties during their mutual operation of the business. The trial court apparently concluded the total contribution of Carolyn to the value of the business was approximately twenty-five percent (25%). This is reflected in the reduction of the $139,807 initial valuation to the $104,591 valuation adopted on remand. Such reduction apparently comprises the approximate percentage of the value attributable to the loss of Carolyn's services to the business. In view of all the evidence on the subject in the record, we cannot say the trial court reached an arbitrary valuation of the business unrelated to its finding of greater value to James. Discerning no abuse of discretion in this regard, Appellant's third assignment is overruled.
 Assignment of Error IV The trial court abused its discretion in finding the Defendant-Appellant in contempt of Court for failing to pay spousal support when the Defendant-Appellant demonstrated an inability to pay, and the weight of the evidence did not support a finding of contempt.
On May 6, 1998, Carolyn filed a motion for contempt for James' failure to pay spousal support in accordance with the temporary orders from November 1997 to April 1998. The orders in effect during that time required James to pay approximately $1,500 per month in support. On May 27, 1998, the trial court held a hearing on Carolyn's motion. Although the trial court did not determine the issue immediately following the hearing, the final divorce decree issued on November 19, 1998 reflects the court's conclusion that James was in contempt. Particularly, the court stated that James made "neither substantial nor meaningful attempts to pay either current support or arrearage * * * and that he has had the ability to do so." The court then sentenced James to 30 days in jail and stated that the contempt would be purged if James paid an extra $100 per week, plus the current spousal support order, until the arrearage became liquidated. James now argues that the finding of contempt was inappropriate. We are not persuaded.
A prima facie case of contempt is demonstrated with proof of the defendant's failure to obey an order of the court. Rossen v.Rossen (1964), 2 Ohio App.2d 381, 384. Once a prima facie case has been established, the defendant may then defend the action with evidence of an inability to comply. Courtney v. Courtney
(1984), 16 Ohio App.3d 329, 334. The trial court's determination of a contempt proceeding will not be disturbed on appeal absent an abuse of discretion. State ex rel. Ventrone v. Birkel (1981),65 Ohio St.2d 10, 11. An abuse of discretion is more than an error in judgment; it implies that the court acted unreasonably, arbitrarily or unconscionably in arriving at its decision.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
Although the evidence is clear that James paid only $100 per month for support from November 1997 to April 1998, James maintains that the trial court abused its discretion in finding him in contempt since he presented evidence of an inability to comply with the order. In support of his defense, James testified that the heating and cooling business declined so much in 1997 that his gross income totaled only $16,200 for that tax year. We note that the tax return that James testified about was not included in the record on appeal. Nonetheless, even though James attempted to persuade the court that he didn't have the ability to comply with the support order, he also admitted that he hired a private investigator and paid $1,900 for a property appraisal during the relevant period of time.
It is clear that the trial court is in the best position to determine the credibility of the witnesses and the weight to be given their testimony. State v. Thomas (1982), 70 Ohio St.2d 79. In this instance, the judgement entry of divorce indicates that the trial court rejected James' testimony about a drastically declining market since it found that James "has the ability to cause the value of the business to fluctuate by his effort or lack [of] effort in maintaining it." The court also found it significant that prior to the divorce action, Webb's Heating and Cooling, Inc. generated a "substantial comfortable income"; the court noted that it was difficult to believe that the business declined so much in such a short period of time.
Based upon the foregoing, we cannot find that the trial court's rejection of James' testimony constitutes an abuse of discretion. Thus, Appellant's fourth assignment of error is overruled.
 Assignment of Error V The trial court abused its discretion in ordering the Defendant-Appellant to pay significant and long term spousal support.
Spousal support is comprised of both the division of the marital estate and periodic payments made for further sustenance.Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, 95; Cherry v.Cherry (1981), 66 Ohio St.2d 348, 352. It is well-settled that trial courts are vested with broad discretion to determine whether to award periodic spousal support and, absent an abuse of discretion, a reviewing court will not reverse a trial court's decision to make such an award. Bolinger v. Bolinger (1996),49 Ohio St.3d 120, 122. An abuse of discretion is more than a simple error in judgment; it implies that the trial court acted in an unreasonable, arbitrary or unconscionable manner. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, appellate courts are cautioned not to substitute their own judgment for that of the trial court. Berkv. Matthews (1990), 53 Ohio St.3d 161, 169.
Although the decision to award periodic spousal support is discretionary, trial courts are statutorily mandated to consider the factors enumerated in R.C. 3105.18(C) to arrive at an appropriate decision. See, generally, Layne v. Layne (1992),83 Ohio App.3d 559. These factors are set forth as follows:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed or distributed under section 3105.17 * * * of the Revised Code;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other fact that the court expressly finds to be relevant and equitable.
The evidence adduced at the original divorce hearing establishes that the parties were married for approximately thirty-four years; James was 15 years old and Carolyn was 17 at the time the marriage was entered into. Each party has a high school education and both are currently in their 50s.
Although James has acquired the specialized training necessary to install and repair various heating and cooling units, Carolyn does not have similar skills. The evidence demonstrates that Carolyn cared for the parties' four children and acted as a housewife for several years during the marriage. Carolyn's only employment, outside of taking care of the phones and books for Webb's Heating and Cooling, Inc., occurred in the early 1980s when she sold real estate on a part-time basis. Carolyn's annual income for real estate sales was never more than $8,000. Carolyn testified that she has never worked a full-time job. A report from her chiropractor indicated that she shouldn't sit at a desk for more than thirty minutes because of the lingering effects from a 1986 car accident. James also testified that he could not work more than thirty-two hours per week because his family physician diagnosed him with depression and anxiety. During the last few years of the marriage, the parties enjoyed a comfortable standard of living due to the success of the family business.
Based upon the foregoing, the trial court ordered James to pay spousal support for eleven years: $950 per month for the first three years; $850 per month for the next three years and $500 per month for the last five years. James asserts that this constitutes an abuse of discretion because the evidence also establishes that James could not meet the support obligation due to a drastic decline in Webb's profits. We disagree. Our discussion in the previous assignment of error indicates that we have already found that the court was not in error for rejecting James' argument that the business could not possibly yield the amount of income that it had just prior to the commencement of the divorce. With that stated, we find that the remaining evidence warrants an award of spousal support in this case, especially because of the duration of the marriage and the significant lack of potential for Carolyn to earn an adequate living on her own.
Appellant's fifth assignment of error is overruled.
 Assignment of Error VI The trial court abused its discretion in ordering the Defendant-Appellant to provide health insurance coverage to the Plaintiff-Appellee for 2 years after the divorce was finalized.
Relevant case law states that trial courts are authorized to order a spouse to maintain health insurance coverage on the other spouse as part of a divorce decree. See, generally, Goode v. Goode
(1991), 70 Ohio App.3d 125, 131. Nonetheless, James maintains that in this case, the trial court abused its discretion in ordering him to continue to pay for Carolyn's health insurance for a period of two years after the filing of the November 19, 1998 judgment entry.
Carolyn is not readily employable, has limited employment skills and presently suffers from continuing physical disability. Because of the obvious uncertainty inherent in her transition from wife and business partner to uncertain employment prospects while continuing treatment for existing injury, we do not find that the trial court has acted unreasonably, unconscionably, or arbitrarily by requiring appellant to provide Carolyn's continued health insurance for an additional two year period of change.
The sixth assignment of error is also overruled.
 Assignment of Error VII The trial court abused its discretion in finding the Defendant-Appellant should not receive a full credit towards his debt/asset distribution and spousal support obligation for the monies he paid towards the marital home's first mortgage.
In his seventh assignment of error, James asserts that the trial court erred in refusing to grant him a credit on his spousal support liability for $10, 267, the total amount he has paid toward the mortgage on the marital home. Rather, the court stated that James was only entitled to a credit in the amount of $5,704.06, which represents payments made on the principal; the rest is interest and fees.
As a threshold matter, we must point out that James' argument centers on the July 20, 1998 "findings" made by the trial court wherein the court specifically addressed this issue and made the above mentioned statements. However, a thorough review of the record demonstrates that these findings were never expressed in a judgment entry or final order. In fact, the judgment entry of divorce, issued on November 19, 1998, completely fails to mention that James is entitled to a $5,704.06 credit.
Nevertheless, even if we were to presume that the trial court incorporated these "findings" into the divorce decree and credited James' support liability, we would still find James' assertion without merit. Particularly, James argues that he is entitled to a full credit because the parties made a specific agreement on that issue. We are not persuaded. The record demonstrates that in a June, 1997 contempt hearing, the parties appeared to enter into some sort of agreement regarding the mortgage payments. However, a review of a subsequent hearing held on April 27, 1998, which was held for the purpose of clarifying the property issues for the court, clearly indicates that the parties did not agree to a full credit. Indeed, Carolyn's attorney stated that he did not intend for prior discussions to result in a full credit. Thus, we refuse to find that a clear, binding stipulation was entered into when the record reveals evidence to the contrary. Furthermore, absent any evidence of an agreement between the parties, James cannot demonstrate that the court abused its discretion in granting him only a partial credit on his support liability.
Appellant's seventh assignment of error is overruled.
 Assignment of Error VIII The trial court abused its discretion by ordering the Defendant-Appellant to pay $500 for attorney fees to the Plaintiff-Appellee as a contempt sanction when the same was against the manifest weight of the evidence.
In Hockenberry v. Hockenberry (1992), 75 Ohio App.3d 806, this court determined that a trial court must consider certain factors in making a decision to award attorney fees. These factors include "the time and labor involved, the fee customarily charged in the locality and the nature and length of the professional relationship with the client." Id. at 810. In this case, James argues that the record is devoid of any mention of these factors by Carolyn's attorney, thus, the decision to order James to pay $500 in attorney fees for the contempt proceeding was an abuse of discretion. Based upon a review of the transcript from the May 27, 1998 contempt hearing, we find that this argument is wholly without merit.
Although Carolyn's attorney did not present evidence with regard to a fee award, counsel for James did present such evidence since the hearing also encompassed a motion for contempt filed by James. (The merits of James' motion are not relevant to this appeal.) In presenting this evidence, James' attorney asserted that an award of $500 was "necessary and reasonable" because of the time expended on the contempt proceedings, coupled with the hourly rate that counsel charged. More significantly, however, James' attorney specifically asked Carolyn's attorney if he thought the fee was necessary and reasonable; Carolyn's attorney agreed that the amount was proper in this case. Thus, it appears that any argument as to the propriety of the $500 award has been waived.
Appellant's eighth assignment of error is overruled.
Having found no error prejudicial to the appellant as assigned and argued, the judgment of the Court of Common Pleas of Marion County is affirmed.
Judgment affirmed.
 SHAW, J., concurs.