OPINION
This case arises out of a divorce proceeding between Appellant, William Robinson ("William"), and Appellee, Mattie Robinson ("Mattie"). In August and September of 1997, the parties filed cross-motions for summary judgment on whether to enforce the separation agreement they previously signed. Mattie argued to enforce the separation agreement in the divorce, and William argued the separation agreement was based on fraud and should not be enforced. The trial court held an evidentiary hearing in response to these motions spanning over two days in December, 1997. Both parties testified, along with Ron Keener, the attorney who prepared the couple's separation agreement. The following testimony was presented.
In January of 1997, after twenty-three years of marriage, William and Mattie decided to begin dissolution proceedings. William contacted Attorney Ron Keener and made an appointment. At this meeting, Mr. Keener indicated that he represented William and advised Mattie of her right to separate counsel, which she declined. The couple then discussed with Mr. Keener their plan for dividing their assets, and completed income expense affidavits. The income expense affidavits reflected that William had no income at all due to disability, whereas Mattie earned approximately $50,000 per year at GM. Additionally, the parties received rental income of $350 per month from a trailer located on the marital property, although this was not disclosed on either affidavit.
Mr. Keener testified that William and Mattie had already agreed how their assets were to be divided. He did not request any bank statements, appraisals, or valuation of pensions because the parties had already worked out an agreement. Mr. Keener testified that William said he did not want to take anything away from Mattie because "he didn't want to hurt her." Also, William felt that his Social Security and Worker's Compensation awards would provide sufficient income. Healthcare was only mentioned to the extent that William said he could receive benefits from the VA.
The couple returned to Mr. Keener in June of 1997 with some changes in the draft separation agreement, which he accommodated. The parties then signed the agreement, and advised him to file for the dissolution. The separation agreement provided that each party would retain their respective pensions, however no value was provided for either one. William's pension was based on approximately nine years working for the Teamsters, and Mattie's was based on twenty-five years with GM. William was expecting to receive both Social Security disability benefits and a Worker's Compensation lump sum settlement, both of which he would keep free of any claims from Mattie. Mattie was to retain the marital residence, for which the parties estimated the equity value to be $100,000. No formal appraisal was performed. Mattie was to pay William $50,000 in exchange for a quit claim deed to the property. The mortgage and utilities were then to be paid by Mattie. William was to retain three of the four vehicles owned by the parties. The fourth vehicle was not mentioned in the agreement. Neither party was to be awarded spousal support and the court was not to retain jurisdiction.
A few days after signing the separation agreement, William contacted Ron Keener and advised him not to proceed with the dissolution as he discovered that his wife was having an affair and he had decided instead to file for divorce. William testified that the reason he decided to file for divorce is that he discovered some things that Mattie had hidden from him. First, he claims Mattie hid some assets, including GM stock, an Income Savings Plan ("ISP") account worth approximately $20,000, and the amount of her credit union account around $8,000. Additionally, William claims he located a month old letter from Social Security rejecting his benefits. He found the letter in the desk in the kitchen of the marital residence and felt that Mattie had hid it from him.
Mattie testified that William was aware of all of these assets he claims she hid from him. She testified that statements regarding each of them arrived in the mail at the marital residence over the years and she did not keep them hidden. Moreover, she testified that William almost always retrieved the mail as she was either at work or asleep when the mail arrived. Additionally, whenever she was laid off from GM, she used the funds in her ISP account to continue to pay for healthcare coverage. She testified that William was aware of this. Finally, William's attorney elicited testimony from Mattie regarding several other assets that neither party listed on their income expense affidavit, but that both were aware of, including a pontoon boat, the house trailers, a doll collection, a china collection, a baseball card collection, two weeks timeshare condominium, Mattie's car, and more. Mattie testified it was her impression from the separation agreement that William had waived his rights to her "financial things," and anything that was in the house they would separate, sell or divide.
Also during this time period of late June 1997, William had Mattie arrested for domestic violence and she was removed from the home on a civil protection order. Mattie moved into an apartment in Kettering, where she remained throughout the divorce proceedings.
In the fall of 1997, the parties sold a parcel of land in Hillsboro for $31,824.39. According to the separation agreement, the proceeds of this sale were to be divided equally between the parties. These proceeds were deposited into a trust account maintained by Mattie's attorney on October 2, 1997. Several disbursements were made from this account pursuant to court order, including payments to William for living expenses, and payments to the mortgage company to avoid foreclosure on the marital residence.
On December 22, 1997, the trial court sustained Mattie's motion for summary judgment enforcing the separation agreement and overruled William's motion for summary judgment. On February 19, 1998, the trial court conducted another hearing which was intended to be the final divorce hearing. The transcript from that proceeding was not provided to this Court. However, the record reflects that grounds were placed on the record on that date and a new hearing was scheduled to resolve any remaining issues and finalize the divorce.
On July 7, 1998, the final hearing was held in this matter. William argued that the parties were not able to agree on division of the unlisted assets as provided in the separation agreement. The agreement stated: "All other personal property, except vehicles as set forth hereinafter, shall be divided equally between the parties." He asked that the court equitably divide the remaining assets including those listed above, two life insurance policies, household goods and equipment, a barn full of farm equipment, and the 1997 income tax refund. Additionally, he requested to be awarded healthcare through COBRA with Mattie's health insurance through GM. The court stated that these issues were all addressed in the prior hearings and were resolved by his ruling enforcing the separation agreement. Further, the court found that it could not enforce any part of the agreement until it was incorporated into a decree.
William also urged the court to determine who was responsible for the mortgage payments on the marital residence from March 1998 through July 1998. William argued that the separation agreement provided that Mattie was responsible for these payments. However, Mattie argued that she was excluded from the residence and had been since the civil protection order was issued against her in June of 1997. There was confusion at the hearing as to where William was living throughout these months, but it was established that only he had keys to the marital residence, not Mattie. Therefore, the court determined that William should be responsible for the mortgage payments during these months.
Finally, William attempted to elicit testimony from Mattie as to the origin of $50,000 in funds proffered to him as the equity he was owed under the separation agreement. William argued that these were newly discovered funds since the separation agreement and thus he was entitled to question their source. The court did not permit testimony on this issue.
A final judgment and decree of divorce was filed on November 19, 1998 which incorporated the separation agreement and did not address any of the personal property William requested be addressed. William appeals from this final judgment raising the following seven assignments of error:
 The trial court erred in granting Appellee's motion for summary judgment adopting the separation agreement into the decree.
 The trial court erred by incorrectly finding there was no fraud or breach of duty to disclose assets.
 The trial court erred in disallowing testimony concerning undisclosed/newly discovered funds.
 The trial court erred in not assigning a present value determination to Appellee's pension benefits.
 The trial court erred in finding the parties[`] separation agreement valid.
 The trial court erred in assessing the mortgage payments against Appellant's portion of escrowed funds and holding Appellant responsible for mortgage payments from March 1998 through July 1998.
 The division of property contained in the parties' separation agreement and adopted by the court fails to comply with the requirements set forth in O.R.C. § 3105.171.
We will address these assignments of error somewhat out of order.
The first and second assignments of error both deal directly with the trial court's decision sustaining Mattie's motion for summary judgment to enforce the separation agreement, and thus will be handled together. The parties in this case chose summary judgment as the method to determine the enforcement of the separation agreement. The purpose of a summary judgment motion is to determine whether there are genuine issues of material fact that should appropriately be heard in an evidentiary hearing.River Terrace Condominium Ass'n v. Lewis (1986), 33 Ohio App.3d 52,57. According to Civ.R. 56, the trial court should grant summary judgment only when the following tripartite test has been satisfied: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 66. If there are genuine issues of material fact, an evidentiary hearing should be held, or trial should proceed.
In the present case, instead of ruling on the summary judgment based on the evidence allowed in Civ.R. 56(C), the trial court held an evidentiary hearing on the issue of enforcing the separation agreement. This was procedural error by the trial court, but it was harmless error. Since there is no right to a jury trial in domestic relations court, the trial court would have heard the evidence and made a decision on the issue regardless of the motions for summary judgment. Although the trial court's decision was in the form of granting summary judgment, on review we will treat it simply as a ruling of the court enforcing the separation agreement. We will disregard the summary judgment standard since the trial court only ruled after holding an evidentiary hearing on the issue.
A separation agreement entered into in anticipation of a dissolution may be incorporated into a divorce decree if the language of the agreement demonstrates that was the parties' intent. Helms v. Helms (Dec. 16, 1992), Summit App. No. 15791, unreported. Paragraph thirteen of the parties' separation agreement states:
 The parties agree that, subject to the approval of the Court, the Separation Agreement shall determine the rights of the parties, one to another, and shall constitute, when approved by the Court, a binding Court Order against both parties hereto and shall be incorporated herein in any divorce, legal separation, or dissolution of marriage instituted by either of the parties hereto. (Emphasis added)
Clearly, the parties intended this separation agreement to be enforced in a divorce proceeding.
During a divorce proceeding, if one or both parties submit a separation agreement to the trial court that was voluntarily entered into, R.C. 3105.10(B)(2) allows the court discretion to choose one of several options. If the court finds the separation agreement to be fair and equitable, it can be incorporated in full into the divorce decree; the court can incorporate portions of the agreement and rule separately on other issues; or the trial court can reject the entire agreement and make rulings on all issues.Bourque v. Bourque (1986), 34 Ohio App.3d 284, 287. This decision will not be reversed absent an abuse of discretion.Schneider v. Schneider (1996), 110 Ohio App.3d 487, 491, citingBlakemore v. Blakemore (1983), 5 Ohio St.3d 217. An abuse of discretion exists where the court's attitude is unreasonable, arbitrary or unconscionable. Id. "It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive." Id., quotingAAAA Ent., Inc. v. River Place Community Urban Redev. Corp.
(1990), 50 Ohio St.3d 157, 161.
In the hearings to enforce the separation agreement, William argued that Mattie had committed fraud by hiding assets and hiding his rejection letter from Social Security prior to entering the separation agreement. All of the documents William found were located in the marital residence. Mattie countered that William was aware of all of the assets he claims she concealed because the statements arrive at the marital residence through the mail and she makes no attempt to hide them. Additionally, Mattie claimed she was unaware of the rejection letter from Social Security.
The trial court, as the trier of fact, has absolute power to judge the credibility of witnesses. Soley v. Soley (1995),101 Ohio App.3d 540, 549. The appellate court gives the trial court deference in this respect because "a judge is in a position to observe the demeanor, gestures and voice inflections of a witness, all of which are outside the record." Id. The trial court was in a much better position to judge the credibility of the witnesses to determine if fraud had been committed and further if the separation agreement should be enforced. The trial court specifically found that Mr. Robinson had not proven that he was "deceived" into entering this separation agreement.
The appellant's second assignment of error is overruled as there is evidence to support the trial court's determination that appellee did not commit fraud. The first assignment is well taken, however. The trial court is duty bound to determine that the parties' separation agreement is fair and equitable. In reMurphy (1983), 10 Ohio App.3d 134. There was testimony that appellant agreed to waive any right to an equitable division of appellee's GM pension because he expected to receive Social Security Disability benefits. When that expectation was dashed by the Social Security Administration, the trial court should have addressed how to equitably divide the appellee's GM pension. The appellant's first assignment of error is sustained in that respect.
In his third assignment, appellant contends the trial court erred in disallowing testimony concerning the origin of the $50,000 payment by appellee to purchase appellant's equity in the marital residence. We find no abuse of discretion in the trial court's ruling. There was no evidence that appellee needed to conceal assets to raise the $50,000 payment. She certainly possessed the ability to borrow the money in light of her employment.
In his fourth assignment, appellant contends the trial court erred in not assigning a present value to appellee's pension. This assignment is sustained in light of our resolution of the first assignment of error. Upon remand, the trial court may divide the pension by determining its present value or by entering Qualified Domestic Relations Order. (QDRO).
In his fifth assignment of error, William argues that the separation agreement was not valid because it did not represent the intent of the parties. A separation agreement is a contract, and thus subject to the same rules of interpretation as any other contract. Forstner v. Forstner (1990), 68 Ohio App.3d 367, 372. The general rule is contracts should be construed from within the four corners of the instrument. Ross v. Ohio Bar Liab. Ins. Co.
(1998), 124 Ohio App.3d 591, 595. Courts presume that the intent of the parties is achieved through the language of the contract.Shifrin v. Forest City Ent., Inc. (1992), 64 Ohio St.3d 635, 638. Moreover, a court can only consider parol evidence if there are ambiguous terms in the contract. Forstner, supra. Thus, if the terms are unambiguous, they must be given their ordinary meaning.Id.
Although we agree with William that the court should consider the intent of the parties when interpreting a contract, we do not agree that the court has the power to venture outside the document if the terms are unambiguous. "The question of whether contract terms are clear or ambiguous is a question of law for the court."Westfield Ins. Co. v. HULS Am., Inc. (June 9, 1998), Franklin App. Nos. 97APE09-1173, 97APE09-1208, unreported, p. 13, citing OhioHistorical Soc. v. Gen. Maintenance Eng. Co. (1989), 65 Ohio App.3d 139,146.
William argues two specific provisions of the separation agreement do not reflect the parties' intent. First, he contends that he only relinquished his interest in Mattie's pension in exchange for her relinquishing any interest in his Worker's Compensation and Social Security benefit awards. He maintains that he would not have waived his rights in her pension had he known his Social Security benefits were going to be rejected. We have addressed this issue in our resolution of the first and fourth assignments.
Second, William argues that the separation agreement does not reflect the parties' intent to equally divide the equity of the marital home. The separation agreement states:
 1. Wife shall be awarded the real estate of the parties located at 10121-10125 Eaton Pike, New Lebanon, Ohio 45345 and Husband shall sign a Quit Claim Deed to the said property deeding said property to the Wife. Wife shall pay to Husband the sum of Fifty Thousand Dollars ($50,000.00) at the time of the final hearing of any dissolution proceeding between the parties.
The separation agreement does not indicate the fifty thousand dollars was to represent the current value of the home. It clearly states that William is to sign a quit claim deed and Mattie is to pay $50,000. A later discovery that the value of the home is more than the parties thought at the time the agreement was entered does not make the language ambiguous. Even if parol evidence were permitted in this case, it would demonstrate that both parties agreed not to have an appraisal done on the home at the time they entered the separation agreement. The parties agreed between themselves the amount Mattie was to pay William to "buy out" his share in the marital home. Accordingly, William's fifth assignment of error is overruled in part and sustained in part.
 In his sixth assignment of error, William argues that the trial court erred in requiring him to pay the mortgage payments on the marital residence from March 1998 to July 1998. William contends that the separation agreement provides for Mattie to pay the mortgage on the marital residence. In the separation agreement, the sentence requiring Mattie to assume the mortgage indebtedness follows the clause requiring William to sign a quit claim deed to the property. Moreover, William testified that Mattie did not have keys to the residence during the period in question. The trial court did not abuse its discretion in ordering William, the only party with access to the marital residence, to pay the mortgage payments during this period of time. William's sixth assignment of error is overruled.
William argues in his seventh assignment of error that the division of property adopted by the trial court in the separation agreement fails to comply with the requirements of R.C. 3105.171. This statute provides that a trial court "shall divide the marital and separate property equitably between the spouses[.]" The starting point should be an equal division of property, unless an equal division would be inequitable. R.C. 3105.171(C)(1).Kaechele v. Kaechele (1988), 35 Ohio St.3d 93. The statute further provides that "the court shall consider all relevant factors, including those set forth in division (F) of this section." R.C. 3105.171(C)(1). These factors include the duration of marriage, the liquidity of property to be distributed, tax consequences, costs of sale of property, economic desirability of leaving an asset intact, and division of property in any separation agreement voluntarily entered into by the parties. R.C. 3105.171(F).
In the present case, the trial court adopted the separation agreement in full and incorporated it into the decree. However, the final divorce decree does not fully comply with R.C. 3105.171. This court has previously held that a court must necessarily value and divide all marital property in a divorce. Ingle v. Ingle
(Nov. 16, 1994), Clark App. No. 3096, unreported, p. 4. It is an abuse of discretion for a court to fail to divide marital property as required by R.C. 3105.171. Id.
In the present case, there were many marital assets that were not addressed in the separation agreement or the final divorce decree. These include a doll collection, a baseball card collection, a China collection, a pontoon boat and trailer, a 1996 Pontiac Grand Am, an ISP account, GM stock, all household goods and furnishings, a full barn of farm equipment, two weeks of a condominium timeshare, two life insurance policies, 1997 income tax refund, two mobile home trailers, and a Prudential mutual fund (this may not be an exhaustive list). William argued at the final hearing that the parties were unable to reach a settlement regarding these items and requested the court equitably divide these remaining assets. The court refused, stating that it could not intervene to divide those marital assets until the separation agreement had been incorporated into a decree. We disagree.
As stated above, R.C. 3105.171 requires a trial court to equitably divide all marital assets. William made the trial court aware at the final hearing that the parties could not agree on an equitable division as required under the separation agreement. At that point, the trial court should have intervened and equitably distributed the remaining property. Leaving the parties in such a state of limbo regarding these remaining assets was an abuse of discretion by the trial court. Based on the foregoing William's seventh assignment of error is sustained. The judgment of the trial court is Affirmed in part and Reversed in part and this matter is Remanded to the trial court for further proceedings consistent with this opinion.
FAIN, J., and YOUNG, J., concur.
Copies mailed to:
Michael A. Marrocco
Robert D. Goelz
Hon. V. Michael Brigner