OPINION *Page 2 
{¶ 1} Appellant Douglas T. Hiscox alleges a variety of errors in the divorce decree granted by the Columbiana County Court of Common Pleas. He has challenged the division of marital property, the award of spousal support, the award of attorney's fees, and he questions whether the court could order him to include his ex-wife as the beneficiary on his life insurance policies. We find no reversible errors in the trial court's judgment, and the judgment is hereby affirmed.
 History of the Case {¶ 2} Appellee Debbie A. Hiscox and Appellant were married on June 17, 1978. Appellee filed a complaint for divorce on June 13, 2005, and Appellant later filed a counterclaim for divorce. There were two children born of the marriage, both of whom were emancipated at the time. Appellant had obtained a Masters Degree and was earning approximately $123,000 per year at the time of divorce. He was employed within Ohio's public school system, eventually becoming a school superintendent. Appellee had a high-school education and was earning approximately $15,000 per year at the time of the divorce.
 {¶ 3} After the complaint was filed, a visiting judge was assigned to the case and temporary orders were issued. During the pendency of the divorce, both parties filed contempt proceedings, and both were found in contempt of the court's temporary orders.
 {¶ 4} The final divorce hearing began on February 17, 2006, and was continued to June 16, 2006. Final judgment in the case was delayed due to a pending appeal concerning the contempt judgments. On March 9, 2007, we *Page 3 
reversed the contempt judgments in Hiscox v. Hiscox, 7th Dist. No. 06-CO-18, 2007-Ohio-1124.
 {¶ 5} On March 16, 2007, the court filed its judgment entry of divorce, along with findings of fact and conclusions of law. The record indicates that Appellant was 52 years old and Appellee was 49 years old at the time the divorce decree was issued. The court determined that Appellant had retirement benefits from the Ohio State Teachers Retirement System (STRS) worth $375,180, as well as an unspecified pension from the Connecticut State Teachers Retirement System. The parties owned a home in Leetonia, Ohio, but had sold it during the pendency of the divorce for a net gain of $101,073, and the money was being held in escrow. The parties stipulated to the division of their personal property. Each party owned one automobile. The court identified two annuities as marital assets worth $54,362 and $15,738 respectively. Appellee had a 401(k) plan worth $400. Appellant owned a life insurance policy with a cash surrender value of $3,849, as well as term life insurance with his employer. The court found that Appellant had received a severance check during the pendency of the divorce proceedings in the amount of $12,675. The court found that the parties had received unspecified tax refunds for the years 2005 and 2006.
 {¶ 6} The court found that Appellant had accumulated substantial credit card debt on three accounts during the divorce proceedings, and had failed to make payments that resulted in late fees and penalties. The debt on the one account was $2,700, and was over $15,000 on each of two other accounts from Sears and Seven Seventeen Credit Union. *Page 4 
 {¶ 7} The court determined that an equitable, rather than an equal, division of marital assets was appropriate. The court divided Appellant's Ohio STRS pension equally between the parties, and granted the Connecticut pension to Appellant. The court ordered Appellant to maintain Appellee as beneficiary of two life insurance policies until such time as Appellee began receiving benefits from Appellant's STRS pension. The court allowed Appellant to keep the cash value of his insurance policy, as well as his severance check. The court ordered Appellant to be responsible for the credit card debt he had amassed. The court equally divided the two annuities and the tax refunds.
 {¶ 8} The court also ordered Appellant to pay $3,000 per month in spousal support. The court set no expiration date on the payment of spousal support.
 {¶ 9} The court ordered Appellant to pay $5,000 of Appellee's attorney's fees due to his, "dilatory response to discovery orders, failure to appear at previous hearing, and due [to] the plaintiff's inability to adequately prosecute this case financially with counsel". (3/16/07 Divorce Decree, p. 11.)
 {¶ 10} Appellant filed this timely appeal on March 30, 2007. There are six assignments of error in this appeal.
 Spousal Support Issues Assignment of Error No. 1 {¶ 11} "THE TRIAL COURT ERRED IN ORDERING SPOUSAL SUPPORT OF UNLIMITED DURATION."
 Assignment of Error No. 2 *Page 5 {¶ 12} "THE TRIAL COURT ABUSED ITS DISCRETION BY ORDERING SPOUSAL SUPPORT IN THE AMOUNT OF THREE THOUSAND DOLLARS PER MONTH."
 Assignment of Error No. 3 {¶ 13} "THE TRIAL COURT ERRED IN FAILING TO EXPRESSLY STATE THAT IT RETAINED JURISDICTION TO MODIFY THE SPOUSAL SUPPORT AWARD."
 {¶ 14} Appellant's first three assignments of error deal with spousal support. A trial court has discretion in awarding spousal support and in determining the amount of spousal support, and the trial court's decisions regarding spousal support will not be reversed on appeal except upon a showing of abuse of discretion. Kunkle v. Kunkle (1990),51 Ohio St.3d 64, 67, 554 N.E.2d 83. An abuse of discretion connotes more than an error of law or judgment; rather, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 5 OBR 481,450 N.E.2d 1140.
 {¶ 15} R.C. 3105.18 governs the awarding of spousal support, and states:
 {¶ 16} "(B) In divorce and legal separation proceedings, upon the request of either party and after the court determines the division or disbursement of property under section 3105.171 of the Revised Code, the court of common pleas may award reasonable spousal support to either party. During the pendency of any divorce, or legal separation proceeding, the court may award reasonable temporary spousal support to either party. *Page 6 
 {¶ 17} "An award of spousal support may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or by installments, from future income or otherwise, as the court considers equitable.
 {¶ 18} "Any award of spousal support made under this section shall terminate upon the death of either party, unless the order containing the award expressly provides otherwise.
 {¶ 19} "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 {¶ 20} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
 {¶ 21} "(b) The relative earning abilities of the parties;
 {¶ 22} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 23} "(d) The retirement benefits of the parties;
 {¶ 24} "(e) The duration of the marriage;
 {¶ 25} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 26} "(g) The standard of living of the parties established during the marriage; *Page 7 
 {¶ 27} "(h) The relative extent of education of the parties;
 {¶ 28} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 29} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 30} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 31} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 32} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 33} "(n) Any other factor that the court expressly finds to be relevant and equitable.
 {¶ 34} "(2) In determining whether spousal support is reasonable and in determining the amount and terms of payment of spousal support, each party shall be considered to have contributed equally to the production of marital income."
 {¶ 35} Appellant contends that the $3,000 per month spousal support award is irrational and unjustified. He asserts that Appellee's claimed expenses were speculative, padded with items that were not true expenses, and that at most, her monthly expenses would be $2,555. According to Appellant, Appellee's estimated *Page 8 
net income was over $1,000 per month, leaving net expenses of $1,555. Appellant concludes that the spousal support award constitutes an abuse of discretion.
 {¶ 36} Appellant's argument is premised largely on his conclusion that the spousal support award exceeds Appellee's demonstrated need for support. We have repeatedly held that, "need is but one factor among many that the trial court may consider in awarding reasonable spousal support." Waller v. Waller, 163 Ohio App.3d 303, 2005-Ohio-4891,837 N.E.2d 843, ¶ 63; Kennedy v. Kennedy, 7th Dist. No. 03 CO 37,2004-Ohio-6798, ¶ 14. Thus, whether or not an award of spousal support is greater or less than the total financial needs established at trial is only one factor for the court to consider.
 {¶ 37} The record indicates that the trial court was aware of and considered the factors in R.C. 3105.18. (2/17/06 Tr., p. 15.) Even a cursory review of the record indicates that the parties lived a very comfortable lifestyle when they were married. Appellee established at trial that her monthly expenses were more than $3,000 and that Appellant previously earned and continued to earn approximately $10,000 per month. Appellant's analysis also fails to take into account that, as a result of the spousal support award, his combined federal, state and local taxes would be reduced by over $12,000 with the payment of spousal support, while Appellee's taxes would increase by over $8,000. (6/16/06 Tr., p. 78, Plaintiff's Exh. 37.) Although it would have been helpful in this appeal to have a bit more analysis of the spousal support award from the trial judge, the record adequately reflects the fairness of the award. *Page 9 
 {¶ 38} We now turn to the question of whether the court retained jurisdiction to modify the spousal support award. To retain jurisdiction over spousal support, the trial court must satisfy the requirements of R.C. 3105.18(E), which states:
 {¶ 39} "(E) If a continuing order for periodic payments of money as alimony is entered in a divorce or dissolution of marriage action that is determined on or after May 2, 1986, and before January 1, 1991, or if a continuing order for periodic payments of money as spousal support is entered in a divorce or dissolution of marriage action that is determined on or after January 1, 1991, the court that enters the decree of divorce or dissolution of marriage does not have jurisdiction to modify the amount or terms of the alimony or spousal support unless the court determines that the circumstances of either party have changed and unless one of the following applies:
"(1) In the case of a divorce, the decree or a separation agreement of the parties to the divorce that is incorporated into the decreecontains a provision specifically authorizing the court to modify theamount or terms of alimony or spousal support." (Emphasis added.)
 {¶ 40} The Ohio Supreme Court has held that, "a trial court has the authority to modify or terminate an order for alimony or spousal support only if the divorce decree contains an express reservation of jurisdiction." Kimble v. Kimble, 97 Ohio St.3d 424, 2002-Ohio-6667,780 N.E.2d 273, at syllabus.
 {¶ 41} In the instant case, the divorce decree does not specifically use the phrase "reserve jurisdiction," nor does it track the language of R.C. 3105.18(E)(1). The divorce decree does state that, "[s]pousal support shall continue until further *Page 10 
order." (3/16/07 Divorce Decree, p. 10.) This statement is contained in the first paragraph of the section explaining the spousal support award.
 {¶ 42} Some appellate courts have held that there is no express reservation of jurisdiction to modify spousal support simply because the court attaches the phrase "until further order of the court" at the end of the divorce decree. In re Dissolution of Marriage of Richards, 4th Dist. No. 02CA2, 2003-Ohio-1005; Moore v. Moore (Dec. 27, 1988), 12th Dist. No. CA88-06-051. Other appellate courts have concluded that a trial court expressly retains jurisdiction over spousal support when the court clearly states that spousal support will continue "until further order" or some similar language. Nastasi v. Nastasi (May 10, 1996), 11th Dist. No. 95-T5223; Stack v. Stack (Nov. 18, 1993), 8th Dist. No. 64114;Stadelman-Wells v. Wells (Apr. 20, 1995), 10th Dist. No. 94APF09-1361.
 {¶ 43} We have been unwilling to find an express reservation of jurisdiction to modify spousal support simply because boilerplate "until further order of the court" language is inserted at the end of a divorce decree. Keck v. Keck (Aug. 10, 2000), 7th Dist. No. 98 CA 247. However, when the trial court specifically states that the spousal support award itself shall continue until further order of the court, and when this statement occurs within the court's discussion of spousal support, we are presented with a much clearer indication that the court fully expected that it would have jurisdiction over subsequent spousal support orders.
 {¶ 44} Further, it would have been unusual for the trial court not to retain jurisdiction in light of the facts of this case. The spousal support award was permanent, the parties are not of advanced age, the actual award of spousal support *Page 11 
is considerable, and the court does not explain why failing to reserve jurisdiction over spousal support would have been equitable or appropriate. It is generally held to be reversible error when a trial court does not retain jurisdiction over a spousal support award when no explanation is given as to why spousal support is being awarded indefinitely. Bardnell v. Bardnell, 169 Ohio App.3d 593, 2006-Ohio-6393,863 N.E.2d 1120, ¶ 46. Given that we would generally expect the trial court to reserve jurisdiction over spousal support under the types of facts presented in this case, and given our previous conclusion that the trial court did sufficiently indicate an intent to retain jurisdiction, we see no reason to reverse and remand the case to the trial court to clarify its intent. We conclude that the trial court retains jurisdiction over the spousal support award.
 {¶ 45} Appellant also contends that the trial court abused its discretion in failing to set a termination date for spousal support. When the divorce decree is silent as to a termination date, spousal support ends upon the death of either party. R.C. 3105.18(B). There is a presumption in favor of spousal support awards of definite duration rather than indefinite termination at the death of either party.Kunkle, supra, 51 Ohio St.3d at 68, 554 N.E.2d 83. Appellant citesKunkle in support, and the following holding from that case is instructive:
 {¶ 46} "Except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of * * * [spousal support] should provide for the termination of the award, within a reasonable time and upon a date certain, in *Page 12 
order to place a definitive limit upon the parties' rights and responsibilities." Id., at paragraph one of the syllabus.
 {¶ 47} The record indicates that the parties were married almost 29 years, that Appellee had only a high-school education, that she was making slightly above minimum wage, and there is no indication that she has any specialized training. The length of the marriage in this case would justify spousal support of indefinite duration. "[A] marriage of long duration `in and of itself would permit a trial court to award spousal support of indefinite duration without abusing its discretion or running afoul of the mandates of Kunkle.'" Vanke v. Vanke (1994),93 Ohio App.3d 373, 377, 638 N.E.2d 630, quoting Corpac v. Corpac (Feb. 27, 1992), 10th Dist. No. 91AP-1036. Generally, marriages lasting over 20 years have been found to be sufficient to justify spousal support of indefinite duration. Vanke, supra; Bowen v. Bowen (1999),132 Ohio App.3d 616, 627, 725 N.E.2d 1165; Soley v. Soley (1995),101 Ohio App.3d 540, 550, 655 N.E.2d 1381. The length of the marriage, along with the other reasons supported by the record in this case, support an award of spousal support of indefinite duration and we find no abuse of discretion in this matter.
 {¶ 48} In addition, when the court retains jurisdiction to modify spousal support, it has been held that the court's failure to specify a termination date for spousal support does not constitute an award for life. Donese v. Donese (Apr. 10, 1998), 2nd Dist. No. 97-CA-70;Bowen, supra, 132 App.3d at 627, 655 N.E.2d 1381. The court may place a termination date on the spousal support award during any modification proceedings. We have already concluded that the trial court *Page 13 
successfully retained jurisdiction over the spousal support award. Therefore, we find no error in the failure to set a specific termination date for the spousal support.
 {¶ 49} For the aforementioned reasons, we overrule Appellant's first, second and third assignments of error.
 Division of Marital Property Assignment of Error No. 4 {¶ 50} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN MAKING ITS DIVISION OF PROPERTY."
 {¶ 51} The parties correctly cite the standard of review in decisions involving the division of marital property, which is that the trial court's decision will not be reversed absent an abuse of discretion.Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355, 20 O.O.3d 318,421 N.E.2d 1293. As stated earlier, an abuse of discretion implies a decision that is unreasonable, arbitrary, or unconscionable.Blakemore, supra, 5 Ohio St.3d at 219, 5 OBR 481, 450 N.E.2d 1140.
 {¶ 52} Marital property in a divorce case should be divided equally, unless the trial court determines that an equal division would be inequitable. R.C. 3105.171(C)(1). If the trial court does not divide the marital assets equally, the record should contain sufficient detail to explain why the unequal division was equitable. Kaechele v.Kaechele (1988), 35 Ohio St.3d 93, 518 N.E.2d 1197, paragraph two of the syllabus.
 {¶ 53} A reviewing court examines the overall equity of the division of marital assets and debt, rather than engage in a detailed analysis of every jot and tittle of marital property: "[I]t is not this court's role to conduct an item by item review of the *Page 14 
marital assets and liabilities. Our review is limited to the equity, i.e., fairness * * *." Fergus v. Fergus (1997), 117 Ohio App.3d 432,438, 690 N.E.2d 949.
 {¶ 54} The trial court is required to consider the factors listed in R.C. 3105.171(F) when dividing the marital assets:
 {¶ 55} "(F) In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
 {¶ 56} "(1) The duration of the marriage;
 {¶ 57} "(2) The assets and liabilities of the spouses;
 {¶ 58} "(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
 {¶ 59} "(4) The liquidity of the property to be distributed;
 {¶ 60} "(5) The economic desirability of retaining intact an asset or an interest in an asset;
 {¶ 61} "(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 {¶ 62} "(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 {¶ 63} "(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 {¶ 64} "(9) Any other factor that the court expressly finds to be relevant and equitable." *Page 15 
 {¶ 65} R.C. 3105.171, "does not require the trial court to address each statutory factor in its written findings of fact. In the absence of an affirmative showing * * * that the court failed to consider the factors, we presume that the trial court followed the statute." (Citation omitted.) Eddy v. Eddy, 4th Dist. No. 01CA20, 2002-Ohio-4345, ¶ 60.
 {¶ 66} Appellant contends that there were five errors in the divisions of marital property. He first argues that his severance check worth $12,675 was not a marital asset. As a basic starting point, though, "severance pay received during the marriage is marital property[.]"McClure v. McClure (1994), 98 Ohio App.3d 27, 41, 647 N.E.2d 832. Appellant essentially argues that he had spent the money from the check by the time the divorce hearing had taken place, and therefore, there was little or no asset left for the court to divide.
 {¶ 67} R.C. 3105.171(E)(3) allows the court to adjust the division of marital property to account for financial misconduct, which includes the dissipation or concealment of assets. The trial court's judgment entry specifically states that Appellant did not explain what happened to the proceeds of the severance check and that Appellee did not receive any benefit from those proceeds. This appears to be a rather clear statement that Appellant had concealed or dissipated the proceeds of the severance check. Therefore, the trial court was free to adjust the marital assets accordingly by taking into account the value of the severance payment in the division of marital assets.
 {¶ 68} Appellant's second argument is that the trial court failed to consider that a part of his STRS teacher's pension was actually earned prior to his marriage and *Page 16 
should have been deducted as a separate asset rather than a marital asset. It is well-established that a vested pension plan accumulated during a marriage is a marital asset. Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 132, 541 N.E.2d 597. The record is silent as to any specific amount Appellant may have contributed to his pension prior to the date he married Appellee, which was June 17, 1978. There is a notation on Plaintiffs Exhibit 15, showing that he contributed $5,687.41 to the retirement plan between the 1976-1977 school year and the 1981-1982 school year, but the exhibit is no more specific than that. Even if the trial court had made some type of guess as to the amount Appellant contributed to his retirement plan in the two years prior to his marriage to Appellee, it is readily apparent that such a guess would have been a de minimus amount compared to the considerable contributions he made to the plan while he was married. At the time of the divorce the pension was worth over $375,000. Appellant failed to present evidence that would have assisted the trial court in making any kind of estimate regarding his pre-marital contributions to the pension. Because neither party presented evidence as to what portion of Appellant's pension was separate property, and because it is obvious from what little evidence that was submitted that this amount is negligible in relation to the entire pension, there is no abuse of discretion in how the trial court categorized Appellant's STRS pension.
 {¶ 69} Appellant's third argument is that the trial court failed to explain why it did not divide the marital property equally. As stated earlier, the starting point for the division of marital property is that it should be divided equally, but the trial court is free to make an unequal division for equitable reasons. Appellant contends that *Page 17 
there was a disparity of almost $49,000 in the division of marital property in Appellee's favor. Appellant, though, has neglected to include a number of very significant elements in his calculations, including the fact that the trial court credited him with the $12,675 severance payment as a marital asset. The trial court also concluded that Appellant personally benefitted when their home had been sold because he did not have to make eleven mortgage payments of $1,500 each, for a total benefit of $16,500. In addition, Appellant incorrectly lists a substantial amount of credit card debt in his calculation of marital debt, when in fact, the trial court attributed the debt to Appellant as his own separate debt. The credit card debt from Sears and Seven Seventeen Credit Union amounted to $30,000, and this should not have been included in Appellant's calculations of the division of marital property. Thus, from these items alone it appears that Appellant should have added $59,000 to his side of the ledger, which is more than the $49,000 amount he argues that Appellee received above and beyond her equal share of the marital property. The record does not reflect any abuse of discretion in the division of the marital property.
 {¶ 70} Appellant's fourth argument is that the trial court failed to divide their personal property. A trial court is required to equitably divide all of the marital property as part of the divorce. R.C. 3105.171(B). The parties stipulated that the property listed on Plaintiff's Exhibit 8 was separate property that had been previously divided by the parties. The trial court also found that the remaining personal property had been equitably divided by the parties prior to the divorce hearing. Appellee herself testified that they had equally divided their personal property. (6/16/06 Tr., *Page 18 
pp. 9-10.) Appellant points to nothing in the record contradicting Appellee's statement. Therefore, we find no error in the division of the personal property.
 {¶ 71} Fifth and finally, Appellant discusses the 2006 tax refund that was equally divided as a marital asset. A tax refund for income earned during the marriage is marital property. Brewer v. Brewer, 4th Dist. No. 2003CA00087, 2004-Ohio-3532, ¶ 77. If the parties were married during the 2006 tax year, then any refund for that year would have been a marital asset. The parties were married during the 2006 tax year because the trial court decided that the marriage ended on March 16, 2007, which was the date of the divorce decree. Although it is certainly more typical to use the date of the final divorce hearing as the end date of the marriage, there is no legal reason a trial court cannot establish a different date if equity so requires. Maloney v. Maloney,160 Ohio App.3d 209, 2005-Ohio-1368, 826 N.E.2d 864, ¶ 93. Because the tax refund was for a time period during which the parties were married, there was no error in the court's decision to treat the refund as a marital asset.
 {¶ 72} We can find no abuse of discretion in the division of marital property, and Appellant's fourth assignment of error is overruled.
 Beneficiary of Life Insurance Policy Assignment of Error No. 5 {¶ 73} "THE TRIAL COURT ABUSED ITS DISCRETION BY ORDERING APPELLANT TO MAINTAIN APPELLEE AS A BENEFICIARY ON HIS LIFE INSURANCE POLICIES." *Page 19 
 {¶ 74} Appellant argues that it was improper for the trial court to order him to keep his ex-wife as a beneficiary on two life insurance policies. The court ordered Appellant to maintain Appellee on his insurance until Appellee began receiving her designated portion of benefits from the STRS pension plan. A court may require a party to provide life insurance as security for all or part of a division of marital property. McCoy v. McCoy (1993), 91 Ohio App.3d 570, 582,632 N.E.2d 1358. The STRS pension plan, as administered under Ohio law, does make some provision for an ex-spouse to be listed as an alternate payee of retirement benefits, but these potential benefits terminate at the death of either the retiree or the alternate payee. R.C. 3105.86. Under the current state statutes, Appellee has no means of obtaining immediate survivorship rights over her equitable portion of Appellant's pension. Thus, the trial court appropriately ordered Appellant to maintain two life insurance policies to secure Appellee's equitable share of Appellant's STRS pension. Accordingly, Appellant's fifth assignment of error is overruled.
 Attorney's Fees Assignment of Error No. 6 {¶ 75} "THE TRIAL COURT ABUSED ITS DISCRETION BY ORDERING APPELLANT TO PAY ATTORNEY FEES OF APPELLEE."
 {¶ 76} Appellant argues that the trial court's order for him to pay $5,000 to Appellee for attorney's fees violated the Double Jeopardy clause of the Fifth Amendment, and constitutes cruel and unusual punishment under the Eighth Amendment. These are both protections that apply only to criminal proceedings, hence, they have no bearing in this case, a civil divorce proceeding. Appellant also *Page 20 
claims that the court was incorrect when it based the award of attorney's fees in part on Appellee's inability to pay her attorney. Appellant argues that Appellee was awarded certain liquid assets as part of the divorce, and that she could have used these funds to pay her attorney.
 {¶ 77} "It is well-established that an award of attorney fees is within the sound discretion of the trial court." Rand v. Rand (1985),18 Ohio St.3d 356, 359, 481 N.E.2d 609.
 {¶ 78} Under R.C. 3105.73(A), a court may award attorney's fees in a divorce for equitable reasons, and, "[i]n determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." Under a prior statute, the court was required to examine whether either party would be prevented from fully litigating the case without the award of attorney's fees, but that provision has since been stricken from the statute. See former R.C. 3105.18(H). The trial court may consider the parties' relative ability to pay their own or the opposing party's attorney's fees, but the court is not obligated to do so.Heyman v. Heyman, 10th Dist. No. 06AP-1070, 2007-Ohio-2241, ¶ 14-16.
 {¶ 79} In the instant case, the court based its award of attorney's fees on a number of factors including Appellant's failure to respond to discovery orders, failure to appear at hearings, as well as Appellee's financial inability to prosecute the case. The record indicates that Appellee has few assets and very little earning ability. R.C. 3105.73(A) also allows the court to consider the spousal support award and the division of marital property when awarding attorney's fees, but the statute does not so *Page 21 
require. In this case, it appears the court chose not to factor these items into its decision.
 {¶ 80} The record further indicates that Appellee had amassed over $16,000 in attorney's fees before the final divorce hearing had concluded. The trial court awarded Appellee partial attorney's fees of $1,500 on February 17, 2006, due to Appellant's failure to appear at a pre-trial hearing. Appellant's obstructive behavior further escalated Appellee's attorney's fees after the court had ordered the partial award of attorney's fees. Appellee was forced to file motions to compel discovery, issue subpoenas, obtain continuances, provide all but one of the exhibits used at trial, prepare final documents in the case, and pay for settlement conference expenses even though Appellant refused to abide by the terms of the settlement. All this occurred while Appellant was in arrears in paying temporary spousal support.
 {¶ 81} Appellant cites the case of Boney v. Boney, 5th Dist. No. 2005CA00152, 2006-Ohio-2599, in support. In Boney, the parties in a divorce had settled all issues via a separation agreement except for spousal support. The court ordered the wife to pay $1,000 per month in spousal support, and $1,200 in attorney's fees. The wife appealed. The Fifth District Court of Appeals reversed the award of attorney's fees to the husband because he had used questionable accounting practices during the litigation of the divorce. Thus, the court concluded that the award of attorney's fees would be rewarding him for his "fast and loose dealings". Id. at ¶ 34. There are no such equitable considerations in the instant case. Appellee requested attorney's fees for Appellant's dilatory tactics during the litigation of the case, and there are no indications of any improprieties by Appellee that would *Page 22 
undermine the fairness of the award. Appellant's sixth assignment of error is overruled.
 {¶ 82} Having found no reversible errors or abuse of discretion in this case, we affirm the judgment of the trial court in full.
Vukovich, J., concurs.
DeGenaro, P.J., concurs in part and dissents in part; see concurring in part and dissenting in part opinion. *Page 23